**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| H-E-B, LP, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Case No.   6:20-cv-00081 |
| | § | |
| WADLEY HOLDINGS, LLC; SOUTHERN | § | |
| SALES & MARKETING GROUP, INC.; | § | |
| NINGBO KUER PLASTIC TECHNOLOGY | § | |
| CO., LTD.; NINGBO KUER KAYAK CO., | § | |
| LTD.; NINGBO KUER OUTDOOR | § | |
| PRODUCTS CO., LTD.; and THE HOME | § | |
| DEPOT, INC., | § | |
| | | |
| Defendants. | | |

**COMPLAINT**

Plaintiff H-E-B, LP ("H-E-B"), by and through its undersigned attorneys, for its

complaint against Defendants Wadley Holdings, LLC, Southern Sales & Marketing Group, Inc.,

Ningbo Kuer Plastic Technology Co., Ltd.; Ningbo Kuer Kayak Co., Ltd.; Ningbo Kuer Outdoor

Products Co., Ltd.; and The Home Depot (collectively, "Defendants") alleges as follows:

## BRIEF SUMMARY OF ALLEGATIONS

For over 100 years, H-E-B has served the communities and consumers of Texas by bringing them goods and services of the highest quality.  At every turn, H-E-B has sought to innovate and pursue the latest technologies in order to improve its product and service offerings. This has earned H-E-B a tremendous reputation and goodwill with its customers throughout the state.

One of the unique products H-E-B has developed is the KODI® cooler.  In addition to incorporating the highest quality materials and superior design, H-E-B's KODI cooler incorporates improved valve technology that has been awarded four U.S. patents.

The KODI coolers also bear special, unique trade dress regarding the placement, color, and appearance of the valve that denote them as H-E-B products.  This recognizable trade dress has taken on special, secondary meaning to consumers, identifying H-E-B as the source of the coolers and associating the coolers with H-E-B's goodwill.

Defendants have sought to capitalize on H-E-B's innovation and reputation by incorporating both the patented technology and protected trade dress into their own coolers without permission.  Defendants have imported, marketed, and sold their confusingly-similar, infringing coolers in Texas and, in particular, in this judicial district.

Defendants' confusingly-similar, infringing coolers have caused H-E-B financial and other irreparable harm.  Accordingly, H-E-B is left with no choice but to seek judicial relief to enforce its intellectual property rights.

## PARTIES

1.        H-E-B is a Texas limited partnership with its principal place of business at 646

South Flores Street, San Antonio, Texas 78204.

2.        On information and belief, Wadley Holdings, LLC, d.b.a., nICE Coolers ("nICE")

is an Alabama limited liability company with its principal place of business at 134 Clay Street,

Wadley, Alabama, 36276-3022.

3.        On information and belief, Southern Sales & Marketing Group, Inc. ("SSMG") is

a Georgia corporation with its principal place of business at 5801 Trade Center Court, Suite A,

Villa Rica, Georgia, 30180-6710.  On information and belief, nICE is a wholly-owned subsidiary

of SSMG.

4.        On information and belief, Ningbo Kuer Plastic Technology Co., Ltd. ("Kuer

Plastic") is a Chinese limited liability company with its principal place of business at South

Cidong Avenue, Binhai Economic Development Zone, Cixi City, Zhejiang Province, People's

Republic of China, 315338.

5.        On information and belief, Ningbo Kuer Kayak Co., Ltd. ("Kuer Kayak") is a

limited liability company with its principal place of business at No. 1433, Jinhai Road, Binhai

Economic Development Zone, Cixi City, Zhejiang Province, People's Republic of China,

315338.

6.        On information and belief, Ningbo Kuer Outdoor Products Co., Ltd. ("Kuer

Outdoor") is a limited liability company with its principal place of business at Room 13-1,

No. 18, Jinye Street, Luotuo Subdistrict, Zhenhai District, Ningbo City, Zhejiang Province,

People's Republic of China, 315202.

7.     On information and belief, The Home Depot, Inc. ("Home Depot"), is a Delaware corporation with its principal place of business at 2455 Paces Ferry Road, Atlanta, Georgia 30339.  Home Depot maintains multiple physical stores within this judicial district, including two within Waco itself at 1803 North I-35 Bellmead and 5605 West Waco Drive.

## JURISDICTION AND VENUE

8.     H-E-B brings this action for patent infringement, trade dress infringement, unfair competition and false designation of origin, trade dress dilution, misappropriation, and unjust enrichment.  This action arises under the Patent Act, 35 U.S.C. § 1, et seq., the Trademark Act of 1946, 15 U.S.C. § 1051, et seq. ("the Lanham Act"), federal common law, the Texas Business & Commerce Code, and state common law, including the law of Texas.

9.     This Court has subject matter jurisdiction over this action pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338, and 1367(a).

10.     Venue is proper in this District pursuant to at least 28 U.S.C. §§ 1391(b) and (c) and § 1400(b).

11.     This Court has personal jurisdiction over nICE and SSMG because, *inter alia*, nICE and SSMG are doing business in the State of Texas.  On information and belief, nICE and SSMG have advertised, promoted, offered for sale, sold, and/or distributed, and continues to advertise, promote, offer for sale, sell, and/or distribute infringing products to customers and potential customers in this judicial district.  H-E-B, its customers, and its potential customers reside in the State of Texas, including in this judicial district and therefore nICE's and SSMG's acts giving rise to this lawsuit and the harm H-E-B has suffered have both occurred in this judicial district.

12.     This Court has personal jurisdiction over Kuer Plastic, Kuer Kayak, and Kuer Outdoor because, *inter alia*, Kuer Plastic, Kuer Kayak, and Kuer Outdoor are doing business in the State of Texas.  On information and belief, Kuer Plastic, Kuer Kayak, and Kuer Outdoor have advertised, promoted, offered for sale, sold, and/or distributed, and continue to advertise, promote, offer for sale, sell, and/or distribute infringing products to customers and potential customers in this judicial district.  H-E-B, its customers, and its potential customers reside in the State of Texas, including in this judicial district and therefore Kuer Plastic's, Kuer Kayak's, and Kuer Outdoor's acts giving rise to this lawsuit and the harm H-E-B has suffered have both occurred in this judicial district.

13.     This Court has personal jurisdiction over Home Depot because, *inter alia*, Home Depot is doing business in the State of Texas including maintaining regular and established places of business within this judicial district.  On information and belief, Home Depot has advertised, promoted, offered for sale, sold, and/or distributed, and continues to advertise, promote, offer for sale, sell, and/or distribute infringing products to customers and potential customers in this judicial district.  H-E-B, its customers, and its potential customers reside in the State of Texas, including in this judicial district and therefore Home Depot's acts giving rise to this lawsuit and the harm H-E-B has suffered have both occurred in this judicial district.

## FACTUAL ALLEGATIONS UNDERLYING ALL CLAIMS

**H-E-B's Innovation, Quality, and Generosity Have Earned It a Special Reputation in the State of Texas.**

14.     H-E-B dates back to November 26, 1905, when Florence Butt opened the C.C. Butts Grocery store in Kerrville, Texas to support her ailing husband and three small children.

15.     Today, H-E-B has grown to over 400 stores in Texas and Mexico, employing over 116,000 partners.  H-E-B is the largest privately-held employer in the state of Texas and one of the largest privately-held retailers in the nation.

16.     Innovation has always been one of H-E-B's core values.  In 1916, that took the form of adding a Model T Ford to make deliveries faster and more efficient.  Today, H-E-B has established an 81,000-square foot innovation laboratory in East Austin, Texas, to continue developing the next generation of grocery technology.

17.     Another core value at H-E-B is quality.  From the time H-E-B began offering its own branded products in the early 1990s, it has promised the quality of its H-E-B-branded goods will always be equal to or exceed those of other brands.

18.     These investments and efforts have earned H-E-B a sterling reputation in the State of Texas.

19.     For example, H-E-B ranked in the top 5 in composite customer loyalty in a 2018 MarketForce study of Favorite Grocery Chains.  https://www.marketforce.com/2018-americas-favorite-grocery-stores.

20.     Similarly, in The Harris Poll's 2018 annual assessment of "Reputational Quality," H-E-B entered at #6, ahead of household names like UPS, Microsoft, and Nike.

https://theharrispoll.com/wp-content/uploads/2018/12/2018-HARRIS-POLL-RQ_2-Summary-Report_FNL.pdf.

21.     Most recently, on January 8, 2020, H-E-B was named the top U.S. grocery retailer in the third annual dunnhumby Retailer Preference Index study.  dunnhumby attributed H-E-B's success in part to H-E-B's "sustained focus and excellence on…private brand" products like the KODI coolers at issue.

22.     H-E-B's reputation has been burnished further by its good acts within the community.

23.     Hunger relief has been a key focus for H-E-B since its founding.  In 2018 alone, H-E-B donated more than 32 million pounds of food to Texas and Mexico food banks, equal to over 25 million meals.

24.     Every year, H-E-B gives away $700,000 in cash prices to teachers, principals, and school districts to reward excellence in education.

25.     H-E-B is a community partner when disaster strikes, routinely donating financial support, emergency supplies, drinking water and food, as well as coordinating assistance efforts to assist those affected by hurricanes and the like.

**H-E-B Identifies the Need for a Better Cooler and Acquires the '543 Patent Family**

26.     H-E-B's Senior Buyer for Grills and Coolers is Brett Ramsey.  Mr. Ramsey joined H-E-B in 1977 and has worked there continuously for forty-two years.

27.     An avid hunter and fisherman, Mr. Ramsey personally spends a great deal of time in the outdoors using cooler products.

28.     While attempting to operate a heavy-duty cooler aboard his brother-in-law's boat, Mr. Ramsey found the cooler frustrating and went looking for better technology.

29.     As it turned out, two inventors—Eric Wooldridge and Daniel Bailey of Stanford, Kentucky—had created improved cooler technology.

30.     On July 31, 2012, Messrs. Wooldridge and Bailey filed U.S. Patent Application No. 13/562,828, entitled "Vacuum Cooler."

31.     U.S. Patent Application No. 13/562,828 eventually issued as U.S. Patent No. 9,296,543 on March 29, 2016 ("the '543 patent").

32.     On October 8, 2015—after U.S. Patent Application No. 13/562,828 was filed but before it issued as the '543 patent—H-E-B acquired all right, title, and interest in that application from Messrs. Wooldridge and Bailey for valid consideration.

33.     As a result of the acquisition, U.S. Patent Application No. 13/562,828 was assigned to H-E-B.  That assignment was duly recorded at the United States Patent & Trademark Office on October 21, 2015.

34.     On February 18, 2016, U.S. Patent Application No. 15/046,919 was filed with the United States Patent & Trademark Office.  This application was a continuation of U.S. Patent Application No. 13/562,828 and claims priority thereto.

35.     On April 3, 2018, U.S. Patent Application No. 15/046,919 issued as U.S. Patent No. 9,932,165 ("the '165 patent").

36.     On February 15, 2018, U.S. Patent Application No. 15/897,348 was filed with the United States Patent & Trademark Office.

37.     This application was a continuation of U.S. Patent Application No. 15/046,919 and claims priority through that application back to the July 31, 2012 filing date for U.S. Patent Application No. 13/562,828.

38.     On November 5, 2019, U.S. Patent Application No. 15/897,348 issued as U.S. Patent No. 10,464,734 ("the '734 patent").

39.     On April 23, 2019, U.S. Patent Application No. 16/392,438 was filed with the United States Patent & Trademark Office.

40.     This application was a continuation of U.S. Patent Application No. 15/897,348 and claims priority through that application back to the July 31, 2012 filing date for U.S. Patent Application No. 13/562,828.

41.     On November 26, 2019, U.S. Patent Application No. 16/392,438 issued as U.S. Patent No. 10,486,887 ("the '887 patent").

42.     On April 24, 2019, U.S. Patent Application No. 16/393,844 was filed with the United States Patent & Trademark Office.

43.     This application was a continuation of U.S. Patent Application No. 15/897,348 and claims priority through that application back to the July 31, 2012 filing date for U.S. Patent Application No. 13/562,828.

44.     On November 26, 2019, U.S. Patent Application No. 16/393,844 issued as U.S. Patent No. 10,486,888 ("the '888 patent").

45.     Collectively, these patents claim various embodiments of a pressure release system for a vacuum cooler and improve the usability of the cooler.

46.     H-E-B sells 20-quart, 38-quart, 75-quart, and 125-quart models of KODI coolers in various colors, all using the inventions embodied in the patents described herein ("the KODI coolers").



KODI, 20-quart cooler.



KODI, 38-quart cooler.



KODI, 75-quart cooler.



KODI, 125-quart cooler.

**KODI Coolers Also Feature Unique, Protected Trade Dress**

47.     In addition to the functional elements related to the asserted patents, H-E-B has also established a distinctive trade dress for the KODI coolers.

48.     The following is a photograph of the front view of a KODI cooler:



49.     All the KODI coolers feature a round pressure release button in the same location, *i.e.*, inside a circular indentation, just below the lid and offset to the left.

50.     The location and shape of the button, the shape of the indentation, and their consistency are all identifying aesthetic choices that are part of the KODI cooler trade dress.

51.     While the KODI coolers come in a number of body colors, the button is consistently presented in H-E-B red to reference the trademarked H-E-B logo.

52.     H-E-B's logo—including its red and white colors—is the subject of Registered Trademark No. 5,506,755.

53.     The color of the button is an identifying aesthetic choice that is part of the KODI cooler trade dress.

54.     The H-E-B red pressure release button on the KODI coolers is always surrounded by a black rosette.

55.     While the rosette is actually the top of a hexagonal nut that allows easy replacement of the button and/valve assembly if necessary, the shape and color of the rosette are intended to match the other accessories on the cooler while providing a direct contrast for the H-E-B red color of the button.

56.     The shape and color of the rosette are identifying aesthetic choices that are part of the KODI cooler trade dress.

57.     The distinctive H-E-B red button surrounded by the black rosette is particularly important for identifying KODI and H-E-B as their source because the exterior of KODI coolers serves as the product's packaging.  The KODI cooler trade dress is on full display to consumers in-store and during the shopping experience to identify that the coolers are made and sold with the high quality, standards, and reputation attributable to KODI and H-E-B.

**H-E-B Has Spent Considerable Resources to Promote KODI Coolers, Which Provide Synergistic Benefits to H-E-B Beyond Mere Sales**

58.     H-E-B has gone to great lengths and expended significant time and resources to promote the KODI brand generally and KODI coolers specifically.

59.     While no one person at H-E-B works on KODI coolers exclusively, as many as thirty to forty people have worked on issues related to the coolers over the years.

60.     H-E-B spends approximately $300,000 per year to perform exclusive marketing of the KODI brand through both traditional media—*e.g.*, video, TV, print, and radio—and social media.

61.     KODI-branded items are also the subject of additional marketing spend when they are combined with other products for TV spots and other special events.

62.     As one example, commercial airtime during the National Football League's annual Super Bowl is considered among the most precious advertising space there is.  H-E-B bought and aired a 60-second commercial during the 2019 Super Bowl that featured the KODI cooler.

63.     The Super Bowl ad for KODI coolers continued to air in Texas markets throughout February of 2019.

64.     The Super Bowl ad for KODI coolers is memorialized at H-E-B's Facebook page at: https://www.facebook.com/HEB/videos/2474762916084547/.

65.     The Super Bowl ad for KODI coolers features H-E-B's protected intellectual property and the value it provides to the KODI coolers.

66.     The KODI cooler in the ad is first shown floating on the surf, which can only happen because of the vacuum seal when the cooler is closed.  This is reinforced when a castaway opens the cooler to find all the food inside—including refrigerated items like tomahawk steaks—still cold and consumable.

-14-

67.     Multiple shots of the KODI cooler in the Super Bowl ad depict the circular H-E-B red pressure release button surrounded by the black rosette in its consistent position, *i.e.*, offset from center inside a circular indentation in the front side of the cooler.

68.     Another example of H-E-B's investment in advertising for the KODI brand is a television commercial entitled "Tough as Texas" that features Mr. Ramsey explaining how KODI coolers are high performing coolers made with the highest quality and developed by H-E-B.

69.     The "Tough as Texas" ad for KODI coolers is memorialized at: http://www.heb.com/static-page/kodi.

70.     The "Tough as Texas" commercial features H-E-B's protected intellectual property and the value it provides to the KODI coolers.

71.     For example, the "Tough as Texas" commercial shows the patented vacuum release button being pressed to release pressure inside the KODI cooler and make it easier to open.

72.     Similarly, the "Tough as Texas" commercial shows multiple shots of the distinguishing trade dress for the KODI coolers.  There are multiple shots of the H-E-B red button surrounded by the black rosette offset from center on the front face of the cooler.

73.     Through H-E-B's extensive and continuous use and promotion, the H-E-B red button surrounded by the black rosette on the KODI cooler has become a well-known indicator of the origin and quality of H-E-B's KODI cooler products.

74.     On information and belief, the H-E-B red button surrounded by the black rosette has acquired substantial secondary meaning in the marketplace and become famous.

75.     As a result of H-E-B's efforts and the highly valuable goodwill and secondary meaning the cooler's H-E-B red button surrounded by the black rosette has acquired, H-E-B owns trade dress rights in the appearances and image of the KODI coolers which customers have come to uniquely associate with H-E-B.

76.     H-E-B has enjoyed significant sales of the KODI coolers to its customers throughout the State of Texas and within this judicial district.

77.     At several H-E-B locations, including some within this judicial district, H-E-B has established a "store within a store" concept for the KODI brand.  This section of the store is devoted entirely to coolers and other merchandise related to using the coolers.

78.     Through the functional relationship between this merchandise and the KODI coolers, sales of the coolers themselves lead to convoyed sales that result in additional revenue. When potential KODI customers are directed elsewhere, H-E-B loses not only the cooler sales themselves, but this additional, convoyed sales revenue.

79.     When customers visit an H-E-B store due to the presence of KODI coolers, those customers may also purchase additional items that are wholly unrelated to the coolers.  Again, if those customers are directed elsewhere for non-KODI coolers, H-E-B loses such additional revenue and Defendants receive such revenue unjustly.

80.     By infringing H-E-B's intellectual property rights in the KODI coolers, Defendants have reduced H-E-B's sales of the KODI coolers, diminished H-E-B's convoyed sales of other products associated with the KODI coolers, and inflicted upon H-E-B reputational harm and other injuries that cannot be compensated solely with money damages.

**Infringement of H-E-B's KODI Cooler Intellectual Property by "nICE Coolers"**

81.     Defendants have purposefully advertised, promoted, offered for sale, sold, and distributed, and continues to advertise, promote, offer for sale, sell, and distribute coolers that violate H-E-B's intellectual property rights.

82.     Defendants have conducted such activities without a license or any other authorization from H-E-B.

83.     nICE and SSMG advertise at least two sets of hard-sided coolers—the "G2" group and the "G3" group—on its website: http://www.nicetumblers.com/coolers/.

84.     The website http://www.nicetumblers.com/coolers/ is viewable within this judicial district and, on information and belief, has been viewed by people within this judicial district.

85.     The nICE G2 coolers come in three sizes that generally track the sizes of KODI coolers offered by H-E-B: 20-quart, 45-quart, and 75-quart.

86.     The nICE G3 coolers come in four sizes: 20-quart, 50-quart, and 75-quart, and 110-quart.

87.     As discussed in more detail below, the nICE G2 and G3 coolers all include a pressure release button that eases the pressure inside the cooler to allow for easier opening.

88.     As discussed in more detail below, the nICE G2 and G3 coolers all utilize the inventions of the patents-in-suit held by H-E-B.

89.     In addition, the nICE G2 and G3 coolers have copied and/or mimic the trade dress of the H-E-B KODI coolers.

90.     The photographs below juxtapose comparable views of a KODI 20-quart cooler and a nICE G2 20-quart cooler.



91.     The nICE cooler is virtually indistinguishable from the H-E-B KODI cooler because of its direct and deliberate copying of H-E-B's trade dress.

92.     Both coolers have a circular indentation on the front face, offset to the left from center, just below the lid.

93.     In those indentations, both coolers have a circular red button.

94.     On both coolers, the circular red button is surrounded by a black rosette.

95.     Individually and collectively, these similarities render the nICE G2 and G3 coolers confusingly similar to H-E-B's KODI coolers.

96.     Consequently, there is a strong likelihood of confusion between the nICE G2 and G3 coolers on the one hand and H-E-B's KODI coolers on the other.

97.     Such confusion threatens to create the false and misleading impression that the infringing coolers are manufactured by, authorized by, or otherwise associated with H-E-B. Such confusion also threatens to erode the public's exclusive identification of the KODI cooler design elements with H-E-B, to lessen the ability of the trade dress to identify and distinguish

-18-

H-E-B's KODI coolers, and to associate H-E-B's distinctive KODI cooler trade dress with products of inferior quality.

98.     On information and belief, the nICE G2 and G3 coolers are manufactured by one or more of Kuer Plastic, Kuer Kayak, and/or Kuer Outdoor at various factories in China.

99.     On information and belief, the nICE G2 and G3 coolers are imported into the United States by some combination of nICE, SSMG, Kuer Plastic, Kuer Kayak, Kuer Outdoor, and/or Home Depot.

100.     On information and belief, after importation, the nICE G2 and G3 coolers are shipped to various locations around the United States including *inter alia* into this judicial district by some combination of nICE, SSMG, Kuer Plastic, Kuer Kayak, Kuer Outdoor, and/or Home Depot.

101.     nICE and SSMG maintain a sales website that reaches into this judicial district for the purposes of marketing and advertising its G2 and G3 cooler products.

102.     nICE and SSMG sell the G2 and G3 coolers through retailers including Home Depot.

103.     Home Depot offers for sale and sells the nICE G2 and G3 coolers, including at its physical locations in this judicial district.

104.     H-E-B used its KODI cooler trade dress extensively and continuously before Defendants began advertising, importing, offering to sell, selling, or distributing the infringing G2 and G3 cooler products.

105.     Moreover, H-E-B's KODI cooler trade dress has become famous and acquired secondary meaning in the State of Texas generally and in this judicial district in particular before Defendants began their unauthorized use of the trade dress.

106.    As such, Defendants actions are unfair and unlawful.  Defendants have received tangible and intangible benefit from falsely associating their infringing products with H-E-B's KODI brand coolers.  Defendants actions also threaten to give them a special advantage in competition with H-E-B as Defendants were not burdened by the expenses of time, money, and effort that H-E-B was forced to undertake to develop the KODI brand and trade dress.

107.    Defendants' actions also threaten to injure H-E-B's reputation in the State of Texas and within this judicial district.

108.    On May 3, 2018, H-E-B's counsel wrote to nICE and SSMG.

109.    H-E-B's May 3, 2018 letter notified nICE and SSMG of the '165 patent and identified how the nICE coolers appeared to infringe.

110.    H-E-B's May 3, 2018 letter asked that nICE and SSMG immediately cease and desist from making, using, selling, or offering to sell the infringing nICE coolers.

111.    Despite the notice conveyed by H-E-B's May 3, 2018 letter, nICE and SSMG have continued their infringing activities.

112.    On information and belief, nICE and SSMG have informed their manufacturers, including Ningbo Kuer Plastic Technology Co., Ltd.; Ningbo Kuer Kayak Co., Ltd.; Ningbo Kuer Outdoor Products Co., Ltd., about H-E-B's '165 patent.

113.    On information and belief, once aware of the '165 patent, nICE, SSMG, and their manufacturers could have, should have, and likely did monitor public records for additional patents that could issue from that same family.

114.    On information and belief, nICE, SSMG, and their manufacturers are aware of the patents that have now issued as continuation of the '165 patent, including the '734 patent, the '887 patent, and the '888 patent.

**Infringement of H-E-B's KODI Cooler Intellectual Property by Kuer Coolers**

115.   In addition to making, importing, and selling nICE coolers, Kuer Plastic, Kuer Kayak, and Kuer Outdoor sell their own brand of coolers to consumers as well as unbranded coolers to other cooler brands/resellers.

116.   Kuer Plastic, Kuer Kayak, and Kuer Outdoor have purposefully advertised, promoted, offered for sale, sold, and distributed, and continue to advertise, promote, offer for sale, sell, and distribute Kuer coolers even though such coolers also violate H-E-B's intellectual property rights.

117.   Kuer Plastic, Kuer Kayak, and Kuer Outdoor have conducted such activities without a license or any other authorization from H-E-B.

118.   The Kuer coolers also come in various sizes, including 20-quart, 35-quart, 45-quart, 60-quart, 70-quart, 75-quart, and 110-quart.

119.   As discussed in more detail below, the Kuer coolers all include a pressure release button that eases the pressure inside the cooler to allow for easier opening.

120.   As discussed in more detail below, the Kuer coolers all utilize the inventions of the patents-in-suit held by H-E-B.

121.   In addition, the Kuer coolers have copied and/or mimic the trade dress of the H-E-B KODI coolers.

122.   The photographs below juxtapose comparable views of a KODI 20-quart cooler and a Kuer 20-quart cooler.



123.   Both coolers have a circular indentation on the front face, just below the lid.

124.   In those indentations, both coolers have a circular red button.

125.   On both coolers, the circular red button is surrounded by a black rosette.

126.   Individually and collectively, these similarities render the Kuer coolers confusingly similar to H-E-B's KODI coolers.

127.   Consequently, there is a strong likelihood of confusion between the Kuer coolers on the one hand and H-E-B's KODI coolers on the other.

128.   Such confusion threatens to create the false and misleading impression that the infringing coolers are manufactured by, authorized by, or otherwise associated with H-E-B. Such confusion also threatens to erode the public's exclusive identification of the KODI cooler design elements with H-E-B, to lessen the ability of the trade dress to identify and distinguish H-E-B's KODI coolers, and to associate H-E-B's distinctive KODI cooler trade dress with products of inferior quality.

129.    On information and belief, the Kuer coolers are manufactured by one or more of Kuer Plastic, Kuer Kayak, and/or Kuer Outdoor at various factories in China.

130.    On information and belief, the Kuer coolers are imported into the United States by some combination of Kuer Plastic, Kuer Kayak, Kuer Outdoor, and/or third-party importers contracted by Kuer Plastic, Kuer Kayak, and/or Kuer Outdoor.

131.    On information and belief, after importation, the Kuer coolers are shipped to various locations around the United States including *inter alia* into this judicial district by some combination of Kuer Plastic, Kuer Kayak, Kuer Outdoor, and/or third-party shippers contracted by Kuer Plastic, Kuer Kayak, and/or Kuer Outdoor.

132.    Kuer Plastic, Kuer Kayak, and Kuer Outdoor maintain sales websites that reach into this judicial district for the purposes of marketing and advertising its cooler products.

133.    Kuer Plastic, Kuer Kayak, and Kuer Outdoor offer for sale and sell the Kuer coolers in this judicial district.

134.    H-E-B used its KODI cooler trade dress extensively and continuously before Defendants began advertising, importing, offering to sell, selling, or distributing the infringing Kuer cooler products.

135.    Moreover, H-E-B's KODI cooler trade dress has become famous and acquired secondary meaning in the State of Texas generally and in this judicial district in particular before Defendants began their unauthorized use of the trade dress.

136.    On March 8, 2016, H-E-B's counsel wrote to Kuer Outdoors LLC which, on information and belief, is a predecessor-in-interest and/or related to one or more of Kuer Plastic, Kuer Kayak, and Kuer Outdoor.

137.   H-E-B's March 8, 2016 letter notified Kuer Outdoors LLC of H-E-B's protected valve technology and trade dress and identified how coolers on Kuer Outdoors LLC's website appeared to infringe.

138.   H-E-B's March 8, 2016 letter asked that Kuer Outdoors LLC immediately cease and desist from any infringing activity.

139.   While Kuer Outdoors LLC did not respond in writing to H-E-B's March 8, 2016 letter, Kuer Outdoors LLC did modify and then take down its website.

140.   Accordingly, on information and belief, the infringement by Kuer Plastic, Kuer Kayak, and Kuer Outdoor has been knowing, willful, and deliberate.

141.   Defendants actions are unfair and unlawful.  Defendants have received tangible and intangible benefit from falsely associating their infringing products with H-E-B's KODI brand coolers.  Defendants actions also threaten to give them a special advantage in competition with H-E-B as Defendants were not burdened by the expenses of time, money, and effort that H-E-B was forced to undertake to develop the KODI brand, innovative technology, and trade dress.

142.   Defendants' actions also threaten to injure H-E-B's reputation in the State of Texas and within this judicial district.

**Infringement of H-E-B's KODI Cooler Intellectual Property by "Everbilt Coolers"**

143.   In addition to selling nICE coolers in its stores, Home Depot has created its own brand of coolers called "Everbilt."

144.   Home Depot has purposefully advertised, promoted, offered for sale, sold, and distributed, and continues to advertise, promote, offer for sale, sell, and distribute Everbilt coolers even though such coolers also violate H-E-B's intellectual property rights.

-24-

145.    Home Depot has conducted such activities without a license or any other authorization from H-E-B.

146.    The Home Depot Everbilt coolers come in four sizes that generally track those offered by H-E-B: 26-quart, 36-quart, 52-quart, and 73-quart.

147.    As discussed in more detail below, the Home Depot Everbilt coolers all include a pressure release button that eases the pressure inside the cooler to allow for easier opening.

148.    As discussed in more detail below, the Home Depot Everbilt coolers all utilize the inventions of the patents-in-suit held by H-E-B.

149.    In addition, the Home Depot Everbilt coolers have copied and/or mimic the trade dress of the H-E-B KODI coolers.

150.    The photographs below juxtapose comparable views of a KODI 20-quart cooler and a Home Depot Everbilt 26-quart cooler.



151.    Both coolers have a circular indentation on the front face, just below the lid.

152.    In those indentations, both coolers have a circular red button.

153.    On both coolers, the circular red button is surrounded by a black rosette.

154.    Individually and collectively, these similarities render the Home Depot Everbilt coolers confusingly similar to H-E-B's KODI coolers.

155.    Consequently, there is a strong likelihood of confusion between the Home Depot Everbilt coolers on the one hand and H-E-B's KODI coolers on the other.

156.    Such confusion threatens to create the false and misleading impression that the infringing coolers are manufactured by, authorized by, or otherwise associated with H-E-B. Such confusion also threatens to erode the public's exclusive identification of the KODI cooler design elements with H-E-B, to lessen the ability of the trade dress to identify and distinguish H-E-B's KODI coolers, and to associate H-E-B's distinctive KODI cooler trade dress with products of inferior quality.

157.    On information and belief, the Home Depot Everbilt coolers are manufactured by one or more of Kuer Plastic, Kuer Kayak, and/or Kuer Outdoor at various factories in China.

158.    On information and belief, the Home Depot Everbilt coolers are imported into the United States by some combination of Kuer Plastic, Kuer Kayak, Kuer Outdoor, and/or Home Depot.

159.    On information and belief, after importation, the Home Depot Everbilt coolers are shipped to various locations around the United States including *inter alia* into this judicial district by some combination of Kuer Plastic, Kuer Kayak, Kuer Outdoor, and/or Home Depot.

160.    Home Depot maintains a sales website that reaches into this judicial district for the purposes of marketing and advertising its Everbilt cooler products.

161.    Home Depot offers for sale and sells the Everbilt coolers, including at its physical locations in this judicial district.

162.    H-E-B used its KODI cooler trade dress extensively and continuously before Defendants began advertising, importing, offering to sell, selling, or distributing the infringing Everbilt cooler products.

163.    Moreover, H-E-B's KODI cooler trade dress has become famous and acquired secondary meaning in the State of Texas generally and in this judicial district in particular before Defendants began their unauthorized use of the trade dress.

164.    As such, Defendants actions are unfair and unlawful.  Defendants have received tangible and intangible benefit from falsely associating their infringing products with H-E-B's KODI brand coolers.  Defendants actions also threaten to give them a special advantage in competition with H-E-B as Defendants were not burdened by the expenses of time, money, and effort that H-E-B was forced to undertake to develop the KODI brand and trade dress.

165.    Defendants' actions also threaten to injure H-E-B's reputation in the State of Texas and within this judicial district.

## Count 1:  Infringement of U.S. Patent No. 9,932,165

166.    H-E-B realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

167.    nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor make, use, sell, offer for sale, and/or import in/into the United States various cooler products.

168.    nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor make, use, sell, offer for sale, and/or import cooler products including but not limited to the following exemplary models:  nICE20, G2 series; nICE45, G2 series; nICE75, G2 series; nICE20, G3

series; nICE50, G3 series; nICE75, G3 series; and nICE110, G3 series (collectively, the "nICE Product(s)").  For example, on information and belief:  Kuer Plastic, Kuer Kayak, and Kuer Outdoor make, use, sell, offer for sale, and import the nICE Products; nICE and SSMG use, sell, offer for sale, and import the nICE Products; and Home Depot sells, offers for sale, and imports the nICE Products.

169.    Home Depot makes, uses, sells, offers for sale, and/or imports cooler products including but not limited to the following exemplary models:  Everbilt 26-quart high-performance cooler with lockable lid; Everbilt 36-quart high-performance cooler with lockable lid; Everbilt 52-quart high-performance cooler with lockable lid; and Everbilt 73 quart high-performance cooler with lockable lid (collectively, the "Home Depot Product(s)").

170.    Kuer Plastic, Kuer Kayak, and Kuer Outdoor make, use, sell, offer for sale, and/or import cooler products including but not limited to the following exemplary models:  Kuer-A cooler 20QT; Kuer-A cooler 45QT; Kuer-A cooler 75QT; Kuer-B cooler 10QT; Kuer-B cooler 20QT; Kuer-B cooler 45QT; Kuer-B cooler 70QT; Kuer-B cooler 75QT; Kuer-B cooler 110QT with wheels; Kuer-B cooler 110QT; Kuer-C cooler 20QT; Kuer-C cooler 35QT; Kuer-C cooler 45QT; Kuer-C cooler 60QT; Kuer-C cooler 70QT with wheels; Kuer-C cooler 75QT; Kuer-D cooler 20QT; Kuer-D cooler 45QT; and Kuer-D cooler 75QT (collectively, the "Kuer Product(s)").

171.    On information and belief, nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor have directly infringed and continue to directly infringe the '165 patent by, among other things, making, using, selling, offering for sale, and/or importing cooler products in/into the United States, including but not limited to the nICE Products, the Home Depot Products, and/or the Kuer Products.

172.     On information and belief, one or more nICE Products include an enclosure defined by at least one wall and a lid, wherein the lid forms a relatively airtight seal with a wall of the nICE Product when in a closed position, wherein the lid and each wall that define the enclosure are insulated, and wherein the enclosure is capable of maintaining a sufficient temperature gradient between an inside of the enclosure and an outside of the enclosure such that at least a partial vacuum forms within the enclosure due to the temperature gradient.

173.     On information and belief, one or more nICE Products include a vacuum release assembly disposed in one of the walls of the nICE Product, wherein the vacuum release assembly is capable of reducing a pressure differential between the enclosure and the outside of the nICE Product.

174.     On information and belief, one or more Home Depot Products include an enclosure defined by at least one wall and a lid, wherein the lid forms a relatively airtight seal with a wall of the Home Depot Product when in a closed position, wherein the lid and each wall that defines the enclosure are insulated, and wherein the enclosure is capable of maintaining a sufficient temperature gradient between an inside of the enclosure and an outside of the enclosure such that at least a partial vacuum forms within the enclosure due to the temperature gradient.

175.     On information and belief, one or more Home Depot Products include a vacuum release assembly disposed in one of the walls of the Home Depot Product, wherein the vacuum release assembly is capable of reducing a pressure differential between the enclosure and the outside of the Home Depot Product.

176.     On information and belief, one or more Kuer Products include an enclosure defined by at least one wall and a lid, wherein the lid forms a relatively airtight seal with a wall

of the Kuer Product when in a closed position, wherein the lid and each wall that defines the enclosure are insulated, and wherein the enclosure is capable of maintaining a sufficient temperature gradient between an inside of the enclosure and an outside of the enclosure such that at least a partial vacuum forms within the enclosure due to the temperature gradient.

177.    On information and belief, one or more Kuer Products include a vacuum release assembly disposed in one of the walls of the Kuer Product, wherein the vacuum release assembly is capable of reducing a pressure differential between the enclosure and the outside of the Kuer Product.

178.    By making, using, testing, offering for sale, selling, and/or importing infringing cooler products, including but not limited to the nICE Products, the Home Depot Products, and/or the Kuer Products, nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor have injured H-E-B and are liable to H-E-B for directly infringing one or more claims of the '165 patent, including at least claim 1, pursuant to 35 U.S.C. § 271(a).

179.    On information and belief, nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor also indirectly infringe the '165 patent by actively inducing infringement under 35 U.S.C. § 271(b).

180.    nICE and SSMG have had knowledge of the '165 patent since at least May 3, 2018.  Further, nICE and SSMG have had knowledge of the '165 patent since at least service of this Complaint.  On information and belief, nICE and SSMG knew of the '165 patent and knew of their infringement, including by way of this lawsuit.

181.    On information and belief, nICE and SSMG intended to induce patent infringement by importers, third-party retailers, and users of the nICE Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the

possibility that its inducing acts would cause infringement.  nICE and SSMG specifically intended and were aware that making, use, sale, offer for sale, and/or import of the nICE Products would infringe the '165 patent.  nICE and SSMG performed the acts that constitute induced infringement with knowledge of the '165 patent and with knowledge that the induced acts would constitute infringement.  For example, on information and belief, nICE and SSMG contract with third-party importers for import of the nICE Products into the United States.  By contracting in a manner that would cause third-party importers to directly infringe one or more claims of the '165 patent, including at least claim 1, nICE and SSMG specifically intended to induce infringement of the '165 patent.  As a further example, on information and belief, nICE and SSMG contract with third-party retailers for sale and for offer for sale of the nICE Products by the third-party retailers.  By contracting in a manner that would cause third-party retailers to directly infringe one or more claims of the '165 patent, including at least claim 1, nICE and SSMG specifically intended to induce infringement of the '165 patent.  As a further example, nICE and SSMG sell and offer for sale the nICE Products to users, including with product manuals that provide instructions on use of the nICE Products.  By selling, offering for sale, and/or providing product documentation for the nICE Products in a manner that would cause users to directly infringe one or more claims of the '165 patent, including at least claim 1, nICE and SSMG specifically intended to induce infringement of the '165 patent.   Accordingly, nICE and SSMG have induced and continues to induce third-party importers, retailers, and users to import, sell, offer for sale, and use the nICE Products in a manner that directly infringes the '165 patent, knowing that such import, sale, offer for sale, and use constitute direct infringement of the '165 patent.

182.    Home Depot has had knowledge of the '165 patent since at least service of this Complaint.  On information and belief, Home Depot knew of the '165 patent and knew of its infringement, including by way of this lawsuit.

183.    On information and belief, Home Depot intended to induce patent infringement by importers, third-party retailers, and users of the nICE Products and Home Depot Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  Home Depot specifically intended and was aware that making, use, sale, offer for sale, and/or import of the nICE Products and Home Depot Products would infringe the '165 patent.  Home Depot performed the acts that constitute induced infringement with knowledge of the '165 patent and with knowledge that the induced acts would constitute infringement.  For example, on information and belief, Home Depot contracts with third-party importers for import of the nICE Products and Home Depot Products into the United States.  By contracting in a manner that would cause third-party importers to directly infringe one or more claims of the '165 patent, including at least claim 1, Home Depot specifically intended to induce infringement of the '165 patent.  As a further example, Home Depot sells and offers for sale the nICE Products and Home Depot Products to users, including with product manuals that provide instructions on use of the nICE Products and Home Depot Products.  By selling, offering for sale, and/or providing product documentation for the nICE Products and Home Depot Products in a manner that would cause users to directly infringe one or more claims of the '165 patent, including at least claim 1, Home Depot specifically intended to induce infringement of the '165 patent.  Accordingly, Home Depot has induced and continues to induce third-party importers and users to import and use the nICE

Products and Home Depot Products in a manner that directly infringes the '165 patent, knowing that such import and use constitute direct infringement of the '165 patent.

184.    Kuer Plastic, Kuer Kayak, and Kuer Outdoor have had knowledge of the '165 patent since at least service of this Complaint.  On information and belief, Kuer Plastic, Kuer Kayak, and Kuer Outdoor knew of the '165 patent and knew of their infringement, including by way of this lawsuit.

185.    On information and belief, Kuer Plastic, Kuer Kayak, and Kuer Outdoor intended to induce patent infringement by importers, third-party retailers, and users of the nICE Products and Kuer Products and had knowledge that the inducing acts would cause infringement or were willfully blind to the possibility that its inducing acts would cause infringement.  Kuer Plastic, Kuer Kayak, and Kuer Outdoor specifically intended and were aware that making, use, sale, offer for sale, and/or import of the nICE Products and Kuer Products would infringe the '165 patent.  Kuer Plastic, Kuer Kayak, and Kuer Outdoor performed the acts that constitute induced infringement with knowledge of the '165 patent and with knowledge that the induced acts would constitute infringement.  For example, on information and belief, Kuer Plastic, Kuer Kayak, and Kuer Outdoor contracts with third-party importers for import of the nICE Products and Kuer Products into the United States.  By contracting in a manner that would cause third-party importers to directly infringe one or more claims of the '165 patent, including at least claim 1, Kuer Plastic, Kuer Kayak, and Kuer Outdoor specifically intended to induce infringement of the '165 patent.  As a further example, Kuer Plastic, Kuer Kayak, and Kuer Outdoor sell and offer for sale the Kuer Products to users, including with product manuals that provide instructions on use of the Kuer Products.  By selling, offering for sale, and/or providing product documentation for the Kuer Products in a manner that would cause users to directly infringe one

or more claims of the '165 patent, including at least claim 1, Kuer Plastic, Kuer Kayak, and Kuer Outdoor specifically intended to induce infringement of the '165 patent. Accordingly, Kuer Plastic, Kuer Kayak, and Kuer Outdoor have induced and continue to induce third-party importers, retailers, and users to import, sell, offer for sale, and use the nICE Products and Kuer Products in a manner that directly infringes the '165 patent, knowing that such import and use constitute direct infringement of the '165 patent.

186.    nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor are utilizing the technology claimed in the '165 patent without paying a reasonable royalty. nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor are infringing the '165 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

187.    Based on the foregoing acts, nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor are jointly and severally liable for infringement of the '165 patent, at least with respect to infringement of the '165 patent through the make, use, sale, offer for sale, and/or import of the nICE Products in/into the United States.

188.    As a result of infringement of the '165 patent by nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor, H-E-B has suffered monetary damages, and seeks recovery in an amount adequate to compensate for that infringement, but in no event less than a reasonable royalty for the use made of the invention by nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor together with interest and costs as fixed by the Court.

189.    On information and belief, infringement of the '165 patent by nICE, SSMG, Kuer Plastic, Kuer Kayak, and Kuer Outdoor has been, and continues to be willful and deliberate, and has caused substantial damage to H-E-B.

## Count 2:  Infringement of U.S. Patent No. 10,464,734

190.    H-E-B realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

191.    nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor make, use, sell, offer for sale, and/or import in/into the United States various cooler products.

192.    nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor make, use, sell, offer for sale, and/or import cooler products including but not limited to the nICE Products.  For example, on information and belief:  Kuer Plastic, Kuer Kayak, and Kuer Outdoor make, use, sell, offer for sale, and import the nICE Products; nICE and SSMG use, sell, offer for sale, and import the nICE Products; and Home Depot sells, offers for sale, and imports the nICE Products.

193.    Home Depot makes, uses, sells, offers for sale, and/or imports cooler products including but not limited to the Home Depot Products.

194.    Kuer Plastic, Kuer Kayak, and Kuer Outdoor make, use, sell, offer for sale, and/or import cooler products including but not limited to the Kuer Products.

195.    On information and belief, nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor have directly infringed and continue to directly infringe the '734 patent by, among other things, making, using, selling, offering for sale, and/or importing cooler products in/into the United States, including but not limited to the nICE Products, the Home Depot Products, and/or the Kuer Products.

196.    On information and belief, one or more nICE Products include an enclosure defined by one or more walls and a lid, the lid forming a relatively airtight seal with a wall of the cooler when in a closed position, wherein the lid and each wall that defines the enclosure are

insulated, and wherein the enclosure is capable of maintaining a sufficient temperature gradient between an inside of the enclosure and an outside of the enclosure such that a suction seal forms at the relatively airtight seal between the lid and the one or more walls of the Home Depot Product when the lid is in the closed position due to the temperature gradient.

197.     On information and belief, one or more nICE Products include a vacuum release assembly disposed in one of the walls of the cooler, wherein the assembly is capable of neutralizing the suction seal between the lid and the one or more walls of the nICE Product.

198.     On information and belief, one or more Home Depot Products include an enclosure defined by one or more walls and a lid, the lid forming a relatively airtight seal with a wall of the cooler when in a closed position, wherein the lid and each wall that defines the enclosure are insulated, and wherein the enclosure is capable of maintaining a sufficient temperature gradient between an inside of the enclosure and an outside of the enclosure such that a suction seal forms at the relatively airtight seal between the lid and the one or more walls of the Home Depot Product when the lid is in the closed position due to the temperature gradient.

199.     On information and belief, one or more Home Depot Products include a vacuum release assembly disposed in one of the walls of the cooler, wherein the assembly is capable of neutralizing the suction seal between the lid and the one or more walls of the Home Depot Product.

200.     On information and belief, one or more Kuer Products include an enclosure defined by one or more walls and a lid, the lid forming a relatively airtight seal with a wall of the cooler when in a closed position, wherein the lid and each wall that defines the enclosure are insulated, and wherein the enclosure is capable of maintaining a sufficient temperature gradient between an inside of the enclosure and an outside of the enclosure such that a suction seal forms

-36-

at the relatively airtight seal between the lid and the one or more walls of the Kuer Product when the lid is in the closed position due to the temperature gradient.

201.   On information and belief, one or more Kuer Products include a vacuum release assembly disposed in one of the walls of the cooler, wherein the assembly is capable of neutralizing the suction seal between the lid and the one or more walls of the Kuer Product.

202.   By making, using, testing, offering for sale, selling, and/or importing infringing cooler products, including but not limited to the nICE Products, the Home Depot Products, and/or the Kuer Products, nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor have injured H-E-B and are liable to H-E-B for directly infringing one or more claims of the '734 patent, including at least claim 1, pursuant to 35 U.S.C. § 271(a).

203.   On information and belief, nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor also indirectly infringe the '734 patent by actively inducing infringement under 35 U.S.C. § 271(b).

204.   nICE and SSMG have had knowledge of the '734 patent since at least service of this Complaint.  On information and belief, nICE and SSMG knew of the '734 patent and knew of their infringement, including by way of this lawsuit.

205.   On information and belief, nICE and SSMG intended to induce patent infringement by importers, third-party retailers, and users of the nICE Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  nICE and SSMG specifically intended and were aware that making, use, sale, offer for sale, and/or import of the nICE Products would infringe the '734 patent.  nICE and SSMG performed the acts that constitute induced infringement with knowledge of the '734 patent and with knowledge that the induced

acts would constitute infringement.  For example, on information and belief, nICE and SSMG contract with third-party importers for import of the nICE Products into the United States.  By contracting in a manner that would cause third-party importers to directly infringe one or more claims of the '734 patent, including at least claim 1, nICE and SSMG specifically intended to induce infringement of the '734 patent.  As a further example, on information and belief, nICE and SSMG contract with third-party retailers for sale and for offer for sale of the nICE Products by the third-party retailers.  By contracting in a manner that would cause third-party retailers to directly infringe one or more claims of the '734 patent, including at least claim 1, nICE and SSMG specifically intended to induce infringement of the '734 patent.  As a further example, nICE and SSMG sell and offer for sale the nICE Products to users, including with product manuals that provide instructions on use of the nICE Products.  By selling, offering for sale, and/or providing product documentation for the nICE Products in a manner that would cause users to directly infringe one or more claims of the '734 patent, including at least claim 1, nICE and SSMG specifically intended to induce infringement of the '734 patent.  Accordingly, nICE and SSMG have induced and continue to induce third-party importers, retailers, and users to import, sell, offer for sale, and use the nICE Products in a manner that directly infringes the '734 patent, knowing that such import, sale, offer for sale, and use constitute direct infringement of the '734 patent.

206.    Home Depot has had knowledge of the '734 patent since at least service of this Complaint.  On information and belief, Home Depot knew of the '734 patent and knew of its infringement, including by way of this lawsuit.

207.    On information and belief, Home Depot intended to induce patent infringement by importers, third-party retailers, and users of the nICE Products and Home Depot Products and

-38-

had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  Home Depot specifically intended and was aware that making, use, sale, offer for sale, and/or import of the nICE Products and Home Depot Products would infringe the '734 patent.  Home Depot performed the acts that constitute induced infringement with knowledge of the '734 patent and with knowledge that the induced acts would constitute infringement.  For example, on information and belief, Home Depot contracts with third-party importers for import of the nICE Products and Home Depot Products into the United States.  By contracting in a manner that would cause third-party importers to directly infringe one or more claims of the '734 patent, including at least claim 1, Home Depot specifically intended to induce infringement of the '734 patent.  As a further example, Home Depot sells and offers for sale the nICE Products and Home Depot Products to users, including with product manuals that provide instructions on use of the nICE Products and Home Depot Products.  By selling, offering for sale, and/or providing product documentation for the nICE Products and Home Depot Products in a manner that would cause users to directly infringe one or more claims of the '734 patent, including at least claim 1, Home Depot specifically intended to induce infringement of the '734 patent.  Accordingly, Home Depot has induced and continues to induce third-party importers and users to import and use the nICE Products and Home Depot Products in a manner that directly infringes the '734 patent, knowing that such import and use constitute direct infringement of the '734 patent.

208.    Kuer Plastic, Kuer Kayak, and Kuer Outdoor have had knowledge of the '734 patent since at least service of this Complaint.  On information and belief, Kuer Plastic, Kuer Kayak, and Kuer Outdoor knew of the '734 patent and knew of its infringement, including by way of this lawsuit.

209.    On information and belief, Kuer Plastic, Kuer Kayak, and Kuer Outdoor intended to induce patent infringement by importers, third-party retailers, and users of the nICE Products and Kuer Products and had knowledge that the inducing acts would cause infringement or were willfully blind to the possibility that its inducing acts would cause infringement. Kuer Plastic, Kuer Kayak, and Kuer Outdoor specifically intended and were aware that making, use, sale, offer for sale, and/or import of the nICE Products and Kuer Products would infringe the '734 patent. Kuer Plastic, Kuer Kayak, and Kuer Outdoor performed the acts that constitute induced infringement with knowledge of the '734 patent and with knowledge that the induced acts would constitute infringement. For example, on information and belief, Kuer Plastic, Kuer Kayak, and Kuer Outdoor contracts with third-party importers for import of the nICE Products and Kuer Products into the United States. By contracting in a manner that would cause third-party importers to directly infringe one or more claims of the '734 patent, including at least claim 1, Kuer Plastic, Kuer Kayak, and Kuer Outdoor specifically intended to induce infringement of the '734 patent. As a further example, Kuer Plastic, Kuer Kayak, and Kuer Outdoor sell and offer for sale the Kuer Products to users, including with product manuals that provide instructions on use of the Kuer Products. By selling, offering for sale, and/or providing product documentation for the Kuer Products in a manner that would cause users to directly infringe one or more claims of the '734 patent, including at least claim 1, Kuer Plastic, Kuer Kayak, and Kuer Outdoor specifically intended to induce infringement of the '734 patent. Accordingly, Kuer Plastic, Kuer Kayak, and Kuer Outdoor have induced and continue to induce third-party importers, retailers, and users to import, sell, offer for sale, and use the nICE Products and Kuer Products in a manner that directly infringes the '734 patent, knowing that such import and use constitute direct infringement of the '734 patent.

210.    nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor are utilizing the technology claimed in the '734 patent without paying a reasonable royalty.  nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor are infringing the '734 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

211.    Based on the foregoing acts, nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor are jointly and severally liable for infringement of the '734 patent, at least with respect to infringement of the '734 patent through the make, use, sale, offer for sale, and/or import of the nICE Products in/into the United States.

212.    As a result of infringement of the '734 patent by nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor, H-E-B has suffered monetary damages, and seeks recovery in an amount adequate to compensate for that infringement, but in no event less than a reasonable royalty for the use made of the invention by nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor together with interest and costs as fixed by the Court.

213.    On information and belief, infringement of the '734 patent by nICE, SSMG, Kuer Plastic, Kuer Kayak, and Kuer Outdoor has been, and continues to be willful and deliberate, and has caused substantial damage to H-E-B.

## Count 3:  Infringement of U.S. Patent No. 10,486,887

214.    H-E-B realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

215.    nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor make, use, sell, offer for sale, and/or import in/into the United States various cooler products.

216.    nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor make, use, sell, offer for sale, and/or import cooler products including but not limited to the nICE Products.  For example, on information and belief:  Kuer Plastic, Kuer Kayak, and Kuer Outdoor make, use, sell, offer for sale, and import the nICE Products; nICE and SSMG use, sell, offer for sale, and import the nICE Products; and Home Depot sells, offers for sale, and imports the nICE Products.

217.    Home Depot makes, uses, sells, offers for sale, and/or imports cooler products including but not limited to the Home Depot Products.

218.    Kuer Plastic, Kuer Kayak, and Kuer Outdoor make, use, sell, offer for sale, and/or import cooler products including but not limited to the Kuer Products.

219.    On information and belief, nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor have directly infringed and continue to directly infringe the '887 patent by, among other things, making, using, selling, offering for sale, and/or importing cooler products in/into the United States, including but not limited to the nICE Products, the Home Depot Products, and/or the Kuer Products.

220.    On information and belief, one or more nICE Products include an enclosure comprising a plurality of walls and a lid that surround a product storage area within the enclosure, wherein the lid forms a seal with the plurality of walls surrounding the product area of the nICE Product when the lid is in a closed position, wherein the lid and each wall that surrounds the enclosure are insulated, and wherein the enclosure is capable of maintaining a temperature differential between an inside of the enclosure and an outside of the enclosure and that a pressure differential forms the seal between the lid and the plurality of walls of the nICE Product when the lid is in the closed position due to the pressure differential.

221.    On information and belief, one or more nICE Products include a vacuum release assembly disposed in at least one of the walls of the nICE Product, wherein the vacuum release assembly is capable of neutralizing the pressure differential between the lid and the plurality of walls of the nICE Product.

222.    On information and belief, one or more Home Depot Products include an enclosure comprising a plurality of walls and a lid that surround a product storage area within the enclosure, wherein the lid forms a seal with the plurality of walls surrounding the product area of the Home Depot Product when the lid is in a closed position, wherein the lid and each wall that surrounds the enclosure are insulated, and wherein the enclosure is capable of maintaining a temperature differential between an inside of the enclosure and an outside of the enclosure and that a pressure differential forms the seal between the lid and the plurality of walls of the Home Depot Product when the lid is in the closed position due to the pressure differential.

223.    On information and belief, one or more Home Depot Products include a vacuum release assembly disposed in at least one of the walls of the Home Depot Product, wherein the vacuum release assembly is capable of neutralizing the pressure differential between the lid and the plurality of walls of the Home Depot Product.

224.    On information and belief, one or more Kuer Products include an enclosure comprising a plurality of walls and a lid that surround a product storage area within the enclosure, wherein the lid forms a seal with the plurality of walls surrounding the product area of the Kuer Product when the lid is in a closed position, wherein the lid and each wall that surrounds the enclosure are insulated, and wherein the enclosure is capable of maintaining a temperature differential between an inside of the enclosure and an outside of the enclosure and

that a pressure differential forms the seal between the lid and the plurality of walls of the Kuer Product when the lid is in the closed position due to the pressure differential.

225.    On information and belief, one or more Kuer Products include a vacuum release assembly disposed in at least one of the walls of the Kuer Product, wherein the vacuum release assembly is capable of neutralizing the pressure differential between the lid and the plurality of walls of the Kuer Product.

226.    By making, using, testing, offering for sale, selling, and/or importing infringing cooler products, including but not limited to the nICE Products, the Home Depot Products, and/or the Kuer Products, nICE, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor have injured H-E-B and are liable to H-E-B for directly infringing one or more claims of the '887 patent, including at least claim 1, pursuant to 35 U.S.C. § 271(a).

227.    On information and belief, nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor also indirectly infringes the '887 patent by actively inducing infringement under 35 U.S.C. § 271(b).

228.    nICE and SSMG have had knowledge of the '887 patent since at least service of this Complaint.  On information and belief, nICE and SSMG knew of the '887 patent and knew of their infringement, including by way of this lawsuit.

229.    On information and belief, nICE and SSMG intended to induce patent infringement by importers, third-party retailers, and users of the nICE Products and had knowledge that the inducing acts would cause infringement or were willfully blind to the possibility that its inducing acts would cause infringement.  nICE and SSMG specifically intended and were aware that making, use, sale, offer for sale, and/or import of the nICE Products would infringe the '887 patent.  nICE and SSMG performed the acts that constitute

induced infringement with knowledge of the '887 patent and with knowledge that the induced acts would constitute infringement.  For example, on information and belief, nICE and SSMG contract with third-party importers for import of the nICE Products into the United States.  By contracting in a manner that would cause third-party importers to directly infringe one or more claims of the '887 patent, including at least claim 1, nICE and SSMG specifically intended to induce infringement of the '887 patent.  As a further example, on information and belief, nICE and SSMG contract with third-party retailers for sale and for offer for sale of the nICE Products by the third-party retailers.  By contracting in a manner that would cause third-party retailers to directly infringe one or more claims of the '887 patent, including at least claim 1, nICE and SSMG specifically intended to induce infringement of the '887 patent.  As a further example, nICE and SSMG sell and offer for sale the nICE Products to users, including with product manuals that provide instructions on use of the nICE Products.  By selling, offering for sale, and/or providing product documentation for the nICE Products in a manner that would cause users to directly infringe one or more claims of the '887 patent, including at least claim 1, nICE and SSMG specifically intended to induce infringement of the '887 patent.  Accordingly, nICE and SSMG have induced and continue to induce third-party importers, retailers, and users to import, sell, offer for sale, and use the nICE Products in a manner that directly infringes the '887 patent, knowing that such import, sale, offer for sale, and use constitute direct infringement of the '887 patent.

230.    Home Depot has had knowledge of the '887 patent since at least service of this Complaint.  On information and belief, Home Depot knew of the '887 patent and knew of its infringement, including by way of this lawsuit.

-45-

231.    On information and belief, Home Depot intended to induce patent infringement by importers, third-party retailers, and users of the nICE Products and Home Depot Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  Home Depot specifically intended and was aware that making, use, sale, offer for sale, and/or import of the nICE Products and Home Depot Products would infringe the '887 patent.  Home Depot performed the acts that constitute induced infringement with knowledge of the '887 patent and with knowledge that the induced acts would constitute infringement.  For example, on information and belief, Home Depot contracts with third-party importers for import of the nICE Products and Home Depot Products into the United States.  By contracting in a manner that would cause third-party importers to directly infringe one or more claims of the '887 patent, including at least claim 1, Home Depot specifically intended to induce infringement of the '887 patent.  As a further example, Home Depot sells and offers for sale the nICE Products and Home Depot Products to users, including with product manuals that provide instructions on use of the nICE Products and Home Depot Products.  By selling, offering for sale, and/or providing product documentation for the nICE Products and Home Depot Products in a manner that would cause users to directly infringe one or more claims of the '887 patent, including at least claim 1, Home Depot specifically intended to induce infringement of the '887 patent.  Accordingly, Home Depot has induced and continues to induce third-party importers and users to import and use the nICE Products and Home Depot Products in a manner that directly infringes the '887 patent, knowing that such import and use constitute direct infringement of the '887 patent.

232.    Kuer Plastic, Kuer Kayak, and Kuer Outdoor have had knowledge of the '887 patent since at least service of this Complaint.  On information and belief, Kuer Plastic,

Kuer Kayak, and Kuer Outdoor knew of the '887 patent and knew of their infringement, including by way of this lawsuit.

233.    On information and belief, Kuer Plastic, Kuer Kayak, and Kuer Outdoor intended to induce patent infringement by importers, third-party retailers, and users of the nICE Products and Kuer Products and had knowledge that the inducing acts would cause infringement or were willfully blind to the possibility that its inducing acts would cause infringement.  Kuer Plastic, Kuer Kayak, and Kuer Outdoor specifically intended and were aware that making, use, sale, offer for sale, and/or import of the nICE Products and Kuer Products would infringe the '887 patent.  Kuer Plastic, Kuer Kayak, and Kuer Outdoor performed the acts that constitute induced infringement with knowledge of the '887 patent and with knowledge that the induced acts would constitute infringement.  For example, on information and belief, Kuer Plastic, Kuer Kayak, and Kuer Outdoor contracts with third-party importers for import of the nICE Products and Kuer Products into the United States.  By contracting in a manner that would cause third-party importers to directly infringe one or more claims of the '887 patent, including at least claim 1, Kuer Plastic, Kuer Kayak, and Kuer Outdoor specifically intended to induce infringement of the '887 patent.  As a further example, Kuer Plastic, Kuer Kayak, and Kuer Outdoor sell and offer for sale the Kuer Products to users, including with product manuals that provide instructions on use of the Kuer Products.  By selling, offering for sale, and/or providing product documentation for the Kuer Products in a manner that would cause users to directly infringe one or more claims of the '887 patent, including at least claim 1, Kuer Plastic, Kuer Kayak, and Kuer Outdoor specifically intended to induce infringement of the '887 patent.  Accordingly, Kuer Plastic, Kuer Kayak, and Kuer Outdoor have induced and continue to induce third-party importers, retailers, and users to import, sell, offer for sale, and use the nICE Products and Kuer

Products in a manner that directly infringes the '887 patent, knowing that such import and use constitute direct infringement of the '887 patent.

234.    nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor are utilizing the technology claimed in the '887 patent without paying a reasonable royalty.  nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor are infringing the '887 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

235.    Based on the foregoing acts, nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor are jointly and severally liable for infringement of the '887 patent, at least with respect to infringement of the '887 patent through the make, use, sale, offer for sale, and/or import of the nICE Products in/into the United States.

236.    As a result of infringement of the '887 patent by nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor, H-E-B has suffered monetary damages, and seeks recovery in an amount adequate to compensate for that infringement, but in no event less than a reasonable royalty for the use made of the invention by nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor together with interest and costs as fixed by the Court.

237.    On information and belief, infringement of the '887 patent by nICE, SSMG, Kuer Plastic, Kuer Kayak, and Kuer Outdoor has been, and continues to be willful and deliberate, and has caused substantial damage to H-E-B.

## Count 4:  Infringement of U.S. Patent No. 10,486,888

238.    H-E-B realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

239.    nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor make, use, sell, offer for sale, and/or import in/into the United States various cooler products.

240.    nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor make, use, sell, offer for sale, and/or import cooler products including but not limited to the nICE Products.  For example, on information and belief:  Kuer Plastic, Kuer Kayak, and Kuer Outdoor make, use, sell, offer for sale, and import the nICE Products; nICE and SSMG use, sell, offer for sale, and import the nICE Products; and Home Depot sells, offers for sale, and imports the nICE Products.

241.    Home Depot makes, uses, sells, offers for sale, and/or imports cooler products including but not limited to the Home Depot Products.

242.    Kuer Plastic, Kuer Kayak, and Kuer Outdoor make, use, sell, offer for sale, and/or import cooler products including but not limited to the Kuer Products.

243.    On information and belief, nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor have directly infringed and continue to directly infringe the '888 patent by, among other things, making, using, selling, offering for sale, and/or importing cooler products in/into the United States, including but not limited to the nICE Products, the Home Depot Products, and/or the Kuer Products.

244.    On information and belief, one or more nICE Products include an enclosure and a lid to surround a product storage area within the enclosure, wherein the lid forms a seal with a top section of the enclosure surrounding the product storage area of the nICE Product when the lid is in a closed position due to a pressure differential between the interior of the nICE Product and an exterior of the nICE Product, wherein the lid and the enclosure are insulated, and wherein

the enclosure is capable of maintaining a temperature differential between the interior of the enclosure and the exterior of the enclosure.

245.     On information and belief, one or more nICE Products include a pressure release assembly disposed in at least one side of the enclosure, wherein the pressure release assembly is capable of neutralizing the pressure differential, wherein the pressure release assembly includes an outside air exhaust or intake channel through which outside air may enter the enclosure, wherein the pressure release assembly includes a plunger including a shaft, the plunger selectively movable with respect to an opening at one end of the outside air exhaust or intake channel to allow air from the exterior of the nICE Product to enter the enclosure through the opening, and wherein the pressure release assembly includes a pressure release button coupled to the plunger.

246.     On information and belief, one or more Home Depot Products include an enclosure and a lid to surround a product storage area within the enclosure, wherein the lid forms a seal with a top section of the enclosure surrounding the product storage area of the Home Depot Product when the lid is in a closed position due to a pressure differential between the interior of the Home Depot Product and an exterior of the Home Depot Product, wherein the lid and the enclosure are insulated, and wherein the enclosure is capable of maintaining a temperature differential between the interior of the enclosure and the exterior of the enclosure.

247.     On information and belief, one or more Home Depot Products include a pressure release assembly disposed in at least one side of the enclosure, wherein the pressure release assembly is capable of neutralizing the pressure differential, wherein the pressure release assembly includes an outside air exhaust or intake channel through which outside air may enter the enclosure, wherein the pressure release assembly includes a plunger including a shaft, the

plunger selectively movable with respect to an opening at one end of the outside air exhaust or intake channel to allow air from the exterior of the Home Depot Product to enter the enclosure through the opening, and wherein the pressure release assembly includes a pressure release button coupled to the plunger.

248.   On information and belief, one or more Kuer Products include an enclosure and a lid to surround a product storage area within the enclosure, wherein the lid forms a seal with a top section of the enclosure surrounding the product storage area of the Kuer Product when the lid is in a closed position due to a pressure differential between the interior of the Kuer Product and an exterior of the Kuer Product, wherein the lid and the enclosure are insulated, and wherein the enclosure is capable of maintaining a temperature differential between the interior of the enclosure and the exterior of the enclosure.

249.   On information and belief, one or more Kuer Products include a pressure release assembly disposed in at least one side of the enclosure, wherein the pressure release assembly is capable of neutralizing the pressure differential, wherein the pressure release assembly includes an outside air exhaust or intake channel through which outside air may enter the enclosure, wherein the pressure release assembly includes a plunger including a shaft, the plunger selectively movable with respect to an opening at one end of the outside air exhaust or intake channel to allow air from the exterior of the Kuer Product to enter the enclosure through the opening, and wherein the pressure release assembly includes a pressure release button coupled to the plunger.

250.   By making, using, testing, offering for sale, selling, and/or importing infringing cooler products, including but not limited to the nICE Products, the Home Depot Products, and/or the Kuer Products, nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer

Outdoor have injured H-E-B and are liable to H-E-B for directly infringing one or more claims of the '888 patent, including at least claim 1, pursuant to 35 U.S.C. § 271(a).

251.    On information and belief, nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor also indirectly infringes the '888 patent by actively inducing infringement under 35 U.S.C. § 271(b).

252.    nICE and SSMG have had knowledge of the '888 patent since at least service of this Complaint.  On information and belief, nICE and SSMG knew of the '888 patent and knew of their infringement, including by way of this lawsuit.

253.    On information and belief, nICE and SSMG intended to induce patent infringement by importers, third-party retailers, and users of the nICE Products and had knowledge that the inducing acts would cause infringement or were willfully blind to the possibility that its inducing acts would cause infringement.  nICE and SSMG specifically intended and were aware that making, use, sale, offer for sale, and/or import of the nICE Products would infringe the '888 patent.  nICE and SSMG performed the acts that constitute induced infringement with knowledge of the '888 patent and with knowledge that the induced acts would constitute infringement.  For example, on information and belief, nICE and SSMG contract with third-party importers for import of the nICE Products into the United States.  By contracting in a manner that would cause third-party importers to directly infringe one or more claims of the '888 patent, including at least claim 1, nICE and SSMG specifically intended to induce infringement of the '888 patent.  As a further example, on information and belief, nICE and SSMG contract with third-party retailers for sale and for offer for sale of the nICE Products by the third-party retailers.  By contracting in a manner that would cause third-party retailers to directly infringe one or more claims of the '888 patent, including at least claim 1, nICE and

SSMG specifically intended to induce infringement of the '888 patent.  As a further example, nICE and SSMG sell and offer for sale the nICE Products to users, including with product manuals that provide instructions on use of the nICE Products.  By selling, offering for sale, and/or providing product documentation for the nICE Products in a manner that would cause users to directly infringe one or more claims of the '888 patent, including at least claim 1, nICE and SSMG specifically intended to induce infringement of the '888 patent.  Accordingly, nICE and SSMG have induced and continue to induce third-party importers, retailers, and users to import, sell, offer for sale, and use the nICE Products in a manner that directly infringes the '888 patent, knowing that such import, sale, offer for sale, and use constitute direct infringement of the '888 patent.

254.    Home Depot has had knowledge of the '888 patent since at least service of this Complaint.  On information and belief, Home Depot knew of the '888 patent and knew of its infringement, including by way of this lawsuit.

255.    On information and belief, Home Depot intended to induce patent infringement by importers, third-party retailers, and users of the nICE Products and Home Depot Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  Home Depot specifically intended and was aware that making, use, sale, offer for sale, and/or import of the nICE Products and Home Depot Products would infringe the '888 patent.  Home Depot performed the acts that constitute induced infringement with knowledge of the '888 patent and with knowledge that the induced acts would constitute infringement.  For example, on information and belief, Home Depot contracts with third-party importers for import of the nICE Products and Home Depot Products into the United States.  By contracting in a manner that would cause third-party

importers to directly infringe one or more claims of the '888 patent, including at least claim 1, Home Depot specifically intended to induce infringement of the '888 patent.  As a further example, Home Depot sells and offers for sale the nICE Products and Home Depot Products to users, including with product manuals that provide instructions on use of the nICE Products and Home Depot Products.  By selling, offering for sale, and/or providing product documentation for the nICE Products and Home Depot Products in a manner that would cause users to directly infringe one or more claims of the '888 patent, including at least claim 1, Home Depot specifically intended to induce infringement of the '888 patent.  Accordingly, Home Depot has induced and continues to induce third-party importers and users to import and use the nICE Products and Home Depot Products in a manner that directly infringes the '888 patent, knowing that such import and use constitute direct infringement of the '888 patent.

256.    Kuer Plastic, Kuer Kayak, and Kuer Outdoor have had knowledge of the '888 patent since at least service of this Complaint.  On information and belief, Kuer Plastic, Kuer Kayak, and Kuer Outdoor knew of the '888 patent and knew of their infringement, including by way of this lawsuit.

257.    On information and belief, Kuer Plastic, Kuer Kayak, and Kuer Outdoor intended to induce patent infringement by importers, third-party retailers, and users of the nICE Products and Kuer Products and had knowledge that the inducing acts would cause infringement or were willfully blind to the possibility that its inducing acts would cause infringement.  Kuer Plastic, Kuer Kayak, and Kuer Outdoor specifically intended and were aware that making, use, sale, offer for sale, and/or import of the nICE Products and Kuer Products would infringe the '888 patent.  Kuer Plastic, Kuer Kayak, and Kuer Outdoor performed the acts that constitute induced infringement with knowledge of the '888 patent and with knowledge that the induced

acts would constitute infringement.  For example, on information and belief, Kuer Plastic, Kuer

Kayak, and Kuer Outdoor contracts with third-party importers for import of the nICE Products

and Kuer Products into the United States.  By contracting in a manner that would cause third-

party importers to directly infringe one or more claims of the '888 patent, including at least claim

1, Kuer Plastic, Kuer Kayak, and Kuer Outdoor specifically intended to induce infringement of

the '888 patent.  As a further example, Kuer Plastic, Kuer Kayak, and Kuer Outdoor sell and

offer for sale the Kuer Products to users, including with product manuals that provide

instructions on use of the Kuer Products.  By selling, offering for sale, and/or providing product

documentation for the Kuer Products in a manner that would cause users to directly infringe one

or more claims of the '888 patent, including at least claim 1, Kuer Plastic, Kuer Kayak, and Kuer

Outdoor specifically intended to induce infringement of the '888 patent.  Accordingly, Kuer

Plastic, Kuer Kayak, and Kuer Outdoor have induced and continue to induce third-party

importers, retailers, and users to import, sell, offer for sale, and use the nICE Products and Kuer

Products in a manner that directly infringes the '888 patent, knowing that such import and use

constitute direct infringement of the '888 patent.

258.    nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor are

utilizing the technology claimed in the '888 patent without paying a reasonable royalty.  nICE,

SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor are infringing the '888 patent

in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously

wrongful, flagrant, or characteristic of a pirate.

259.    Based on the foregoing acts, nICE, SSMG, Home Depot, Kuer Plastic, Kuer

Kayak, and Kuer Outdoor are jointly and severally liable for infringement of the '888 patent, at

least with respect to infringement of the '888 patent through the make, use, sale, offer for sale, and/or import of the nICE Products in/into the United States.

260.    As a result of infringement of the '888 patent by nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor, H-E-B has suffered monetary damages, and seeks recovery in an amount adequate to compensate for that infringement, but in no event less than a reasonable royalty for the use made of the invention by nICE, SSMG, Home Depot, Kuer Plastic, Kuer Kayak, and Kuer Outdoor together with interest and costs as fixed by the Court.

261.    On information and belief, infringement of the '888 patent by nICE, SSMG, Kuer Plastic, Kuer Kayak, and Kuer Outdoor has been, and continues to be willful and deliberate, and has caused substantial damage to H-E-B.

## Count 5:  Trade Dress Infringement

262.    H-E-B realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

263.    Defendants' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) by infringing H-E-B's cooler trade dress.  Defendants' use of H-E-B's trade dress and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Defendants with H-E-B and as to the origin, sponsorship, and/or approval of the infringing cooler products, at least by creating the false and misleading impression that the infringing cooler products are manufactured by, authorized by, or otherwise associated with H-E-B.

264.    H-E-B's cooler trade dress is entitled to protection under the Lanham Act. H-E-B's cooler trade dress includes unique, distinctive, and non-functional designs.  H-E-B has

extensively and continuously promoted and used their cooler trade dress in the United States. Through that extensive and continuous use, H-E-B's cooler trade dress has become a well-known indicator of the origin and quality of H-E-B's coolers.  H-E-B's cooler trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, H-E-B's cooler trade dress acquired this secondary meaning before Defendants commenced their unlawful use of H-E-B's cooler trade dress in connection with the infringing cooler products.

265.    Defendants' use of H-E-B's cooler trade dress has caused and, unless enjoined, will continue to cause substantial and irreparable injury to H-E-B for which H-E-B has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with H-E-B's cooler trade dress, H-E-B's cooler products, and H-E-B.

266.    On information and belief, Defendants' use of H-E-B's cooler trade dress and colorable imitations thereof has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the extreme similarity of the infringing cooler products to H-E-B's cooler trade dress, as pictured above, and by Defendants' continuing disregard for H-E-B's rights.

267.    H-E-B is entitled to injunctive relief, and H-E-B is entitled to recover at least Defendants' profits, H-E-B's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

**Count 6:  Unfair Competition and False Designation of Origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

268.    H-E-B realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

269.     Defendants' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing cooler products, in direct competition with H-E-B, violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and constitute unfair competition and false designation of origin.  Defendants have at least obtained an unfair advantage as compared to H-E-B through Defendants' use of H-E-B's cooler trade dress and because such uses are likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of the infringing cooler products, at least by creating the false and misleading impression that the infringing cooler products are manufactured by, authorized by, or otherwise associated with H-E-B.

270.     H-E-B's cooler trade dress is entitled to protection under the Lanham Act. H-E-B's cooler trade dress includes unique, distinctive, and non-functional designs.  H-E-B has extensively and continuously promoted and used their cooler trade dress in the State of Texas. Through that extensive and continuous use, H-E-B's cooler trade dress has become a well-known indicator of the origin and quality of H-E-B's coolers.  H-E-B's cooler trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, H-E-B's cooler trade dress acquired this secondary meaning before Defendants commenced their unlawful use of H-E-B's cooler trade dress in connection with the infringing cooler products.

271.     Defendants' use of H-E-B's cooler trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to H-E-B for which H-E-B has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with H-E-B's cooler trade dress, H-E-B's cooler products, and H-E-B.

272.     On information and belief, Defendants' use of H-E-B's cooler trade dress and colorable imitations thereof has been intentional, willful, and malicious.  Defendants' bad faith is

evidenced at least by the extreme similarity of the infringing cooler products to H-E-B's cooler

trade dress, as pictured above, and by Defendants' continuing disregard for H-E-B's rights.

273.    H-E-B is entitled to injunctive relief, and H-E-B is also entitled to recover at least

Defendants' profits, H-E-B's actual damages, enhanced damages, costs, and reasonable attorney

fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

**Count 7:  Trade Dress Dilution under § 43(c) of the Lanham Act, 15 U.S.C.  § 1125(c)**

274.    H-E-B realleges and incorporates by reference the preceding paragraphs as though

fully set forth herein.

275.    Defendants' advertisements, promotions, offers to sell, sales, and/or distribution

of the infringing cooler products violate § 43(c) of the Lanham Act, 15 U.S.C.  § 1125(c).

276.    H-E-B's cooler trade dress is entitled to protection under the Lanham Act.

H-E-B's cooler trade dress includes unique, distinctive, and non-functional designs.  H-E-B's

cooler trade dress has acquired distinctiveness through H-E-B's extensive and continuous

promotion and use of H-E-B's cooler trade dress in the State of Texas.  Through that extensive

and continuous use, H-E-B's cooler trade dress has become a famous well-known indicator of

the origin and quality of H-E-B's coolers throughout the State of Texas, and is widely recognized

by the general consuming public as a designation of the source of H-E-B and H-E-B's coolers.

H-E-B's cooler trade dress has also acquired substantial secondary meaning in the marketplace.

Moreover, H-E-B's cooler trade dress became famous and acquired this secondary meaning

before Defendants commenced their unlawful use of H-E-B's cooler trade dress in connection

with the infringing cooler products.

277.    Defendants' use of H-E-B's cooler trade dress is likely to cause, and has caused,

dilution of H-E-B's famous cooler trade dress, at least by eroding the public's exclusive

identification of H-E-B's famous cooler trade dress with H-E-B and H-E-B's coolers, by lessening the capacity of H-E-B's famous cooler trade dress to identify and distinguish H-E-B's coolers, by associating H-E-B's cooler trade dress with products of inferior quality, and by impairing the distinctiveness of H-E-B's famous cooler trade dress.

278.    Defendants' use of H-E-B's cooler trade dress has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to H-E-B for which H-E-B has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with H-E-B's cooler trade dress, H-E-B's cooler products, and H-E-B.

279.    On information and belief, Defendants' use of H-E-B's cooler trade dress and colorable imitations thereof has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the extreme similarity of the infringing cooler products to H-E-B's cooler trade dress, as pictured above, and by Defendants' continuing disregard for H-E-B's rights.

280.    H-E-B is entitled to injunctive relief, and H-E-B is also entitled to recover at least Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorney fees under at least 15 U.S.C.  §§ 1125(c), 1116, and 1117.

### Count 8:  Trade Dress Dilution under Tex. Bus. & Com. Code § 16.103

281.    H-E-B realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

282.    Defendants' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing cooler products violate § 16.103 of the Texas Business & Commerce Code.

283.    H-E-B's cooler trade dress is entitled to protection under Texas law.  H-E-B's cooler trade dress includes unique, distinctive, and non-functional designs.  H-E-B has

extensively and continuously promoted and used its cooler trade dress in the State of Texas. Through that extensive and continuous use, H-E-B's cooler trade dress has become famous and a well-known indicator of the origin and quality of H-E-B's coolers in the State of Texas generally and in this judicial district, and H-E-B's cooler trade dress is widely recognized by the public throughout Texas and in this judicial district as a designation of the source of H-E-B and H-E-B's coolers.  H-E-B's cooler trade dress also acquired substantial secondary meaning in the marketplace, including in the State of Texas and in this judicial district.  Moreover, H-E-B's cooler trade dress became famous and acquired this secondary meaning before Defendants commenced their unlawful use of H-E-B's cooler trade dress in connection with the infringing cooler products.

284.    Defendants' use of H-E-B's cooler trade dress and colorable imitations thereof is likely to cause, and has caused, dilution of H-E-B's famous cooler trade dress at least by eroding the public's exclusive identification of H-E-B's famous cooler trade dress with H-E-B, by lessening the capacity of H-E-B's famous cooler trade dress to identify and distinguish H-E-B's coolers, by associating H-E-B's cooler trade dress with products of inferior quality, and by impairing the distinctiveness of H-E-B's famous cooler trade dress.

285.    Defendants' use of H-E-B's cooler trade dress, and/or colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to H-E-B for which H-E-B has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with H-E-B's cooler trade dress, H-E-B's cooler products, and H-E-B.

286.    On information and belief, Defendants' use of H-E-B's cooler trade dress and colorable imitations thereof has been intentional, willful, and malicious.  Defendants' bad faith is

evidenced at least by the extreme similarity of the infringing cooler products to H-E-B's cooler

trade dress, as pictured above, and by Defendants' continuing disregard for H-E-B's rights.

287.    H-E-B is entitled to injunctive relief, and H-E-B is also entitled to recover at least

Defendants' profits, actual damages, enhanced profits and damages, and reasonable attorney fees

under at least Tex. Bus. & Com. Code § 16.104.

### Count 9:  Common Law Trademark Infringement

288.    H-E-B realleges and incorporates by reference the preceding paragraphs as though

fully set forth herein.

289.    Defendants' advertisements, promotions, offers to sell, sales, and/or distribution

of the infringing cooler products, in direct competition with H-E-B, constitute common law trade

dress infringement, at least because Defendants' use of H-E-B's cooler trade dress and/or

colorable imitations thereof is likely to cause consumer confusion as to the origin and/or

sponsorship/affiliation of the infringing cooler products, at least by creating the false and

misleading impression that the infringing cooler products are manufactured by, authorized by, or

otherwise associated with H-E-B.

290.    H-E-B's cooler trade dress is entitled to protection under the common law.

H-E-B's cooler trade dress includes unique, distinctive, and non-functional designs.  H-E-B has

extensively and continuously promoted and used its cooler trade dress in the State of Texas.

Through that extensive and continuous use, H-E-B's cooler trade dress has become a well-known

indicator of the origin and quality of H-E-B's coolers.  H-E-B's cooler trade dress has also

acquired substantial secondary meaning in the marketplace.  Moreover, H-E-B's cooler trade

dress acquired this secondary meaning before Defendants commenced their unlawful use of

H-E-B's cooler trade dress in connection with the infringing cooler products.

291.    Defendants' use of H-E-B's cooler trade dress, and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to H-E-B for which H-E-B has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with H-E-B's cooler trade dress, H-E-B's cooler products, and H-E-B.

292.    On information and belief, Defendants' use of H-E-B's cooler trade dress and colorable imitations thereof has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the extreme similarity of the infringing cooler products to H-E-B's cooler trade dress, as pictured above, and by Defendants' continuing disregard for H-E-B's rights.

293.    H-E-B is entitled to injunctive relief, and H-E-B is also entitled to recover at least H-E-B's damages, Defendants' profits, punitive damages, costs, and reasonable attorney fees.

## Count 10:  Common Law Unfair Competition

294.    H-E-B realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

295.    Defendants' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing cooler products, in direct competition with H-E-B, constitute common law unfair competition, at least by palming off/passing off of Defendants' goods, by simulating H-E-B's cooler trade dress in an intentional and calculated manner that is likely to cause consumer confusion as to origin and/or sponsorship/affiliation of the infringing cooler products, at least by creating the false and misleading impression that the infringing cooler products are manufactured by, authorized by, or otherwise associated with H-E-B.  Defendants have also interfered with H-E-B's business.

296.     H-E-B's cooler trade dress is entitled to protection under the common law. H-E-B's cooler trade dress includes unique, distinctive, and non-functional designs.  H-E-B has extensively and continuously promoted and used H-E-B's cooler trade dress for years in the State of Texas.  Through that extensive and continuous use, H-E-B's cooler trade dress has become a well-known indicator of the origin and quality of H-E-B's coolers.  H-E-B's cooler trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, H-E-B's cooler trade dress acquired this secondary meaning before Defendants commenced their unlawful use of H-E-B's cooler trade dress in connection with the infringing cooler products.

297.     Defendants' use of H-E-B's cooler trade dress has caused and, unless enjoined, will continue to cause substantial and irreparable injury to H-E-B for which H-E-B has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with H-E-B's cooler trade dress, H-E-B's cooler products, and H-E-B.

298.     On information and belief, Defendants' use of H-E-B's cooler trade dress and colorable imitations thereof has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the extreme similarity of the infringing cooler products to H-E-B's cooler trade dress, as pictured above, and by Defendants' continuing disregard for H-E-B's rights.

299.     H-E-B is entitled to injunctive relief, and H-E-B is also entitled to recover at least H-E-B's damages, Defendants' profits, punitive damages, costs, and reasonable attorney fees.

## Count 11:  Common Law Misappropriation

300.     H-E-B realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

301.     Defendants' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing cooler products, in direct competition with H-E-B, constitute common law misappropriation.

302.     H-E-B created the products covered by H-E-B's cooler trade dress through extensive time, labor, effort, skill, and money.  Defendants have wrongfully used H-E-B's cooler trade dress, and/or colorable imitations thereof in competition with H-E-B and gained a special advantage because Defendants were not burdened with the expenses incurred by H-E-B. Defendants has commercially damaged H-E-B, at least by causing consumer confusion as to origin and/or sponsorship/affiliation of the infringing cooler products, by creating the false and misleading impression that the infringing cooler products are manufactured by, authorized by, or otherwise associated with H-E-B, and by taking away sales that H-E-B would have made.

303.     H-E-B's cooler trade dress is entitled to protection under the common law. H-E-B's cooler trade dress includes unique, distinctive, and non-functional designs.  H-E-B has extensively and continuously promoted and used H-E-B's cooler trade dress for years in the State of Texas.  Through that extensive and continuous use, H-E-B's cooler trade dress has become a well-known indicator of the origin and quality of H-E-B's coolers.  H-E-B's cooler trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, H-E-B's cooler trade dress acquired this secondary meaning before Defendants commenced their unlawful use of H-E-B's cooler trade dress in connection with the infringing cooler products.

304.     Defendants' use of H-E-B's cooler trade dress has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to H-E-B for which H-E-B has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with H-E-B's cooler trade dress, H-E-B's cooler

-65-

products, and H-E-B.  Moreover, as a result of their misappropriation, Defendants have profited and, unless such conduct is enjoined by this Court, will continue to profit by misappropriating the time, effort, and money that H-E-B invested in establishing the reputation and goodwill associated with H-E-B's cooler trade dress, H-E-B, and H-E-B's cooler products.

305.    Defendants' misappropriation of H-E-B's cooler trade dress and colorable imitations thereof has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the extreme similarity of the infringing cooler products to H-E-B's cooler trade dress, as pictured above, and by Defendants' continuing disregard for H-E-B's rights.

306.    H-E-B is entitled to injunctive relief, and H-E-B is also entitled to recover at least H-E-B's damages, Defendants' profits, punitive damages, costs, and reasonable attorney fees.

## Count 12:  Unjust Enrichment

307.    H-E-B realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

308.    Defendants' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing cooler products, in direct competition with H-E-B, constitute unjust enrichment, at least because Defendants has wrongfully obtained benefits at H-E-B's expense.  Defendants has also, *inter alia*, operated with an undue advantage.

309.    H-E-B created the products covered by H-E-B's cooler trade dress through extensive time, labor, effort, skill, and money.  Defendants has wrongfully used and is wrongfully using H-E-B's cooler trade dress, and/or colorable imitations thereof, in competition with H-E-B, and has gained and is gaining a wrongful benefit by undue advantage through such use.  Defendants has not been burdened with the expenses incurred by H-E-B, yet Defendants are obtaining the resulting benefits for their own business and products.

310.     H-E-B's cooler trade dress is entitled to protection under the common law. H-E-B's cooler trade dress includes unique, distinctive, and non-functional designs.  H-E-B has extensively and continuously promoted and used H-E-B's cooler trade dress for years in the State of Texas.  Through that extensive and continuous use, H-E-B's cooler trade dress has become a well-known indicator of the origin and quality of H-E-B's coolers.  H-E-B's cooler trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, H-E-B's cooler trade dress acquired this secondary meaning before Defendants commenced their unlawful use of H-E-B's cooler trade dress and colorable imitations thereof in connection with the infringing cooler products.

311.     Defendants' use of H-E-B's cooler trade dress, and/or colorable imitations thereof, has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to H-E-B for which H-E-B has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with H-E-B's cooler trade dress, H-E-B's cooler products, and H-E-B.  H-E-B accumulated this goodwill and reputation through extensive time, labor, effort, skill, and investment.  Defendants have wrongfully obtained and are wrongfully obtaining a benefit at H-E-B's expense by taking undue advantage and free-riding on H-E-B's efforts and investments, and enjoying the benefits of H-E-B's hard-earned goodwill and reputation.

312.     Defendants' unjust enrichment at H-E-B's expense has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the extreme similarity of the infringing cooler products to H-E-B's cooler trade dress, as pictured above, and by Defendants' continuing disregard for H-E-B's rights.

313.     H-E-B is entitled to injunctive relief, and H-E-B is also entitled to recover at least Defendants' profits.

## PRAYER FOR RELIEF

H-E-B requests the Court enter judgment against Defendants as follows:

(A)     That Defendants have infringed the patents-in-suit in violation of 35 U.S.C. § 271;

(B)     That Defendants have infringed H-E-B's KODI cooler trade dress, engaged in unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a);

(C)     That Defendants have diluted H-E-B's KODI cooler trade dress in violation of 15 U.S.C. § 1125(c) and Tex. Bus. & Com. Code § 16.103;

(D)     That Defendants have violated H-E-B's common law rights in its KODI cooler trade dress;

(E)     That Defendants have engaged in common law unfair competition and misappropriation;

(F)     That Defendants have been unjustly enriched at H-E-B's expense;

(G)     Awarding H-E-B its damages suffered as a result of Defendants' infringement, including but not limited to Defendants' profits, H-E-B's actual damages, enhanced damages, exemplary damages, costs, prejudgment and post judgment interest, and reasonable attorney fees;

(H)     Finding this case to be exceptional within the meaning of 35 U.S.C. § 285;

(I)     Awarding H-E-B its costs, attorneys' fees, expenses, and interest;

(J)     Trebling H-E-B's damages from nICE, SSMG, Kuer Plastic, Kuer Kayak, and Kuer Outdoor due to willfulness;

(K)     Enjoining further wrongful acts by Defendants that would further irreparably injure H-E-B and its intellectual property;

(L)     Ordering a recall of all infringing products sold and/or distributed, including providing a full refund for all recalled infringing products;

(M)     Ordering destruction of (i) all infringing products, (ii) any other products that use a copy, reproduction, or colorable imitation of H-E-B's KODI cooler trade dress in Defendants' possession or control, (iii) all plates, molds, and other means of making the infringing products, and (iv) all advertising materials related to the infringing products, including those on the Internet, pursuant to at least 15 U.S.C. § 1118.

(N)     Ordering Defendants to publish a public notice providing proper attribution of H-E-B's KODI cooler trade dress to H-E-B, and to provide a copy of this notice to all customers, distributors, and/or others from whom the infringing products are recalled;

(O)     Ordering a bar on importation of infringing products and/or colorable imitations thereof into the United States, and barring entry of infringing products and/or colorable imitations thereof into any customhouse of the United States, pursuant to at least 15 U.S.C. § 1125(b); and

(P)     Granting H-E-B such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

H-E-B hereby demands trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38.

Dated:  January 31, 2020                    Respectfully submitted,


                                            */s/ Thomas N. Millikan*
                                            ─────────────────────────────
                                            Thomas N. Millikan, Texas Bar No. 24105276
                                            TMillikan@perkinscoie.com
                                            Joseph P. Reid (*Pro Hac Vice Pending*)
                                            JReid@perkinscoie.com
                                            Kyle R. Canavera (*Pro Hac Vice Pending*)
                                            KCanavera@perkinscoie.com
                                            PERKINS COIE LLP
                                            11452 El Camino Real, Suite 300
                                            San Diego, California 92130
                                            Telephone:  858.720.5700
                                            Facsimile:   858.720.5799

                                            Attorneys for Plaintiff
                                            H-E-B, LP