**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| H-E-B, LP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 6:20-CV-00081-ADA |
| | § | |
| WADLEY HOLDINGS, LLC; | § | |
| SOUTHERN SALES & MARKETING | § | |
| GROUP, INC.; NINGBO KUER | § | |
| PLASTIC TECHNOLOGY CO., LTD.; | § | |
| NINGBO KUER KAYAK CO., LTD.; | § | |
| NINGBO KUER OUTDOOR | § | |
| PRODUCTS CO., LTD.; HOME DEPOT | § | |
| U.S.A., INC.; and HOME DEPOT | § | |
| PRODUCT AUTHORITY, LLC, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' OPPOSED MOTION TO STRIKE AND RENEWED OPPOSED
MOTION TO PRECLUDE TESTIMONY OF PLAINTIFF'S EXPERT**

**I.    INTRODUCTION**

Defendants move to strike the declaration of Dr. Charles Garris, and renew their opposed

Motion To Preclude Plaintiff H-E-B from offering, or relying on, expert testimony by Dr.

Charles Garris for claim construction.  As shown below, Plaintiff H-E-B failed to timely disclose

the potential expert testimony and opinions in a good faith, informative fashion.  For the

convenience of the Court and the parties, and by agreement, this pleading presents for resolution

the issues previously raised in Defendants' Motion to Preclude (Dkt. 55) as well as those issues

coalescing with the filing of Plaintiff's opening claim construction brief (Dkt. 56) and the Garris

declaration.

**II.    RELEVANT FACTS**

The Scheduling Order ("Order") set deadlines of September 4, 2020 for exchanging

proposed claim constructions, and September 11, 2020, for disclosure of extrinsic evidence. Exhibit A, at 2 (Dkt. 41). The Order is quite clear about the degree of detail required for disclosure of expert extrinsic evidence: "With respect to any expert identified, the parties **shall** also provide a summary of the witness's expected testimony, including the **opinions** to be expressed **and a general description of the basis and reasons** therefore. A failure to summarize the potential expert testimony in a **good faith, informative fashion** may result in the exclusion of the proffered testimony." *Id*., (Dkt. 41, at 2) (emphasis added).

On September 4, 2020, Defendants timely served their list of proposed constructions. *See* Exhibit B hereto. In pertinent part, Defendants identified, as indefinite, the "proximate" and "total heat transfer" terms. *Id*., at 6-7. Plaintiff also timely served a list of proposed constructions. Plaintiff's list asserted "plain and ordinary" meanings for all terms, except for terms governed by § 112(f). *See* Exhibit C hereto.

On September 11, 2020, Defendants timely served their Joint Disclosure of Extrinsic Evidence. *See* Exhibit D hereto. They identified Dr. Jeffrey Olafsen as an expert who they might rely on "with respect to claim construction or indefiniteness." Defendants then set forth a six-page summary of his expected testimony including the opinions to be expressed and a general description of the basis and reasons therefore. *Id*. at 2-7.

Now, the crux of the dispute: H-E-B's September 11, 2020 Disclosure of Extrinsic Evidence named Dr. Charles Garris as a person that "may provide expert opinions in these claim construction proceedings. *See* Exhibit E hereto. However, H-E-B failed to summarize Dr. Garris' potential testimony "in a good faith, informative fashion," or in any meaningful way at all. H-E-B provided nothing more than a few stock, conclusory sentences that fail to comport with the obligation imposed by the Order. In pertinent part, H-E-B stated "that Dr. Garris's [sic]

will provide opinions regarding all the claim terms for construction, how they should be construed according to H-E-B's September 4, 2020 Identification of Proposed Claim Constructions, **how the terms are not indefinite**, and how a person of ordinary skill in the art ('POSITA') would have understood their plain meaning and/or construction." *Id.*, at 2 (emphasis added).  H-E-B also stated "[t]he bases of Dr. Garris's opinions are expected to be based on the intrinsic evidence, extrinsic evidence, and/or his experience in the field." *Id*.

H-E-B provided absolutely no explanation about "how the terms are not indefinite."  Nor did H-E-B provide a summary of Dr. Garris's potential testimony regarding why the disputed claim terms should be given their plain and ordinary meaning.  Rather, H-E-B "summarized" Dr. Garris's opinions and the bases and reasons therefore with nothing more than generic boilerplate language.

Counsel timely met and conferred by telephone on September 16, 2020 to discuss claim constructions.  Defendants told H-E-B its expert disclosure failed to comply with its obligations and asked H-E-B not to offer expert testimony on claim construction.  H-E-B responded that its disclosure was sufficient.  Later that day, H-E-B's counsel requested legal authority supporting Defendants' position that H-E-B's expert disclosure was insufficient, and the next day (September 17) he was sent, by email, the citation to *Lodsys* (discussed below).  On September 23, 2020, having heard nothing further, Defendants followed up, asking via email for H-E-B's agreement to not present testimony from Dr. Garris in connection with claim construction.  The next day, September 24, having still not heard anything, undersigned counsel called H-E-B.

H-E-B's apparent response—after asserting that its initial disclosure was sufficient—was an email proffer of an unauthorized, untimely "supplemental disclosure."  *See* Exhibit F.  The next day, September 25, 2020, H-E-B filed its opening claim construction brief, accompanied by

a declaration of Dr. Garris. The Garris declaration includes his opinions on how the two claim terms are not indefinite and provides a background discussion that is inconsistent with the disclosed invention. *See* Exhibit G, ¶¶ 23-26 (mechanisms for forming a vacuum in a closed space), ¶¶ 27-33 (indefiniteness). The parties again met and conferred on September 30, 2020, but H-E-B refused to withdraw the Garris declaration. Accordingly, this Motion is opposed.

## III.   ARGUMENT

### A.   The Inadequate Disclosure About Indefiniteness Invalidity

The H-E-B "disclosure" lacked the substance required by the Scheduling Order which parallels P.R. 4-2(b) of the Eastern District of Texas. Exhibit A. There can be no doubt, "[b]oth the letter and the spirit of the Patent Rules require early and complete disclosure of extrinsic evidence relevant to claim construction." *Advanced Mktg. Sys. v. CVS Pharmacy, Inc.*, No. 6:15-cv-134-JRG-KNM, 2016 U.S. Dist. LEXIS 58472, at *13-18 (E.D. Tex. May 3, 2016) (citing *Lodsys, LLC v. Brother Int'l Corp.*, No. 2:11-cv-90-JRG, 2013 WL 6442185, at *1-2 (E.D. Tex. Mar. 12, 2013)). H-E-B wholly failed to adhere to the letter and spirt of P.R. 4-2 and 4-3, or to this Court's analogous practice.

The language in the Scheduling Order in this case parallels the language in P.R. 4-2(b): "The parties **shall** also provide a summary of the witness's expected testimony including the opinions to be expressed and a general description of the basis and reasons therefore." Dkt. 41, at 2. (Emphasis added.) Indeed, the Scheduling Order goes a step beyond P.R. 4-2(b) by explicitly addressing the consequences of generic boilerplate disclosures of expert testimony: "A failure to summarize the potential expert testimony in a good faith, informative fashion may result in the exclusion of the proffered testimony. *Id.*

H-E-B's disclosures relative to Dr. Garris are not a "good faith" summary, and they are anything but "informative." After affirmatively representing that Dr. Garris would opine **how**

the terms are not indefinite, H-E-B failed to provide a "general description of the basis and reasons" as to the generic opinions Dr. Garris might offer, including why he believes the claim terms should be given their plain and ordinary meaning or why he believes the terms Defendants identified as indefinite are "not indefinite."  Dr. Garris does not offer any opinions on why terms should be given plain and ordinary meaning, and H-E-B has given up that part of the fight.

Courts in the Eastern District of Texas have expressly rejected exactly the sort of generalized assertion set out in H-E-B's disclosure.  *See Lodsys*, at *2 (in the context of failing to satisfy P.R. 4-3(b)); *Advanced Mktg. Sys.*, at *17.  In *Lodsys*, the Court held "that a party may not rely upon an expert declaration that is produced for the first time along with the party's claim construction brief" because "[e]ven before the parties prepare their joint claim construction and prehearing statement, **Patent Rule 4-2(b)** requires broad disclosure and production of "extrinsic evidence, including without limitation, dictionary definitions, citations to learned treatises and prior art, and **testimony** of percipient and **expert witnesses** …." *Lodsys*, at *2 (emphasis added); *Cf. TQP Dev., LLC v. Wells Fargo & Co.*, No. 2:12-CV-61-JRG-RSP, 2013 U.S. Dist. LEXIS 169259, at *10-13 (E.D. Tex. Dec. 2, 2013) (rejecting "wait-and-see" approach for disclosure of rebuttal expert opinion).

In fact, in the context of the Patent Rules, Eastern District courts have held, "[s]worn declarations of expert witnesses should be disclosed in the same manner as dictionary definitions, citations to learned treatises [or] prior art." *Id.*, at *3; *see also LBS Innovations, LLC v. Apple Inc.*, 2020 U.S. Dist. LEXIS 50353, at *4-7 (E.D. Tex. Mar. 24, 2020) (finding LBS's expert declaration untimely since not disclosed until opening claim construction brief).  Sending an unauthorized supplement one day before serving the declaration does not excuse H-E-B's failure to comply with the Court's Order or mitigate the prejudice to Defendants.  Defendants were  forced to make decisions about which claim terms to present for construction by the Court

without adequate notice of any opinions H-E-B's expert may offer. Defendants were further prejudiced because H-E-B had an advance look at the positions taken by Defendants' experts, undermining the exchange obligation imposed by the Scheduling Order and P.R. 4-2, and giving H-E-B's expert an unfair advantage.

This Court should not allow H-E-B to flaunt the specific disclosure requirements with generalized disclosures. H-E-B's deficient initial boilerplate disclosure of its extrinsic evidence created an unfair advantage to Defendants' prejudice, and its last-minute efforts to cure that initial deficiency shows H-E-B had no good-faith basis for failing to comply with the Court's Order. Defendants will only be further prejudiced if Plaintiff is permitted to rely on Dr. Garris' declaration on his views of invalidity.

### B.    The End-Run on "Capable of Maintaining Terms"

Dr. Garris's "background" discussion of "the various mechanisms for forming a vacuum in a closed space" is an end-run to support H-E-B's plain and ordinary meaning argument for the "capable of maintaining terms." Paragraphs 23-25 are inconsistent with the intrinsic evidence and should be stricken because they seek to interject creating a vacuum by internal cooling, rather than by removing air to create a vacuum. Paragraph 26 is a short version of the only mechanism disclosed in the section of the patents titled "Operation of the Invention." *See, e.g.*, Exhibit H (U.S. Patent No. 9,296,543), 3:22-37; Exhibit I (U.S. Patent No. 10,486,887), 3:36-53.

For context, each specification discloses a vacuum pump assembly 32 with a vacuum pump handle 16. When the lid assembly 10 is positioned on cooler assembly 14, the user can operate the vacuum pump handle 16 to remove air from the vacuum spaces 56 and the product storage area 54. The resulting vacuum within the vacuum spaces 56 and the product storage area 54 cooler seals the cooler lid assembly 10 to the cooler assembly 14. Exhibit H, 4:46-5:4 & Fig. 7; Exhibit I, 5:46-52 & Fig. 7.

The invention's requirement for a vacuum pump to remove air is reinforced by the section titled "Operation of the Invention" of each patent, which explains that the "invention" operates "[b]y creating a substantial vacuum in the cooler [by evacuating air] the stored product's capacity to transfer or receive energy via conduction or convection through air molecules is substantially limited due to the fact there are no longer air molecules in the vicinity of the stored products to facilitate such a transfer." *See, e.g.*, Exhibit H, 3:22-26; Exhibit I, 3:37-53. Each "Operation of the Invention" section identifies as an additional benefit of the invention that oxygen is removed: "*By creating a substantial vacuum in the cooler assembly* the detrimental effects of an oxygen rich environment are greatly reduced due to the fact that *oxygen is no longer present.*" Exhibit H, 3:45-48, Exhibit I, 3:50-54 (emphasis added).

The descriptions of the drawings emphasize that all of the figures depicting a cooler are "constructed according to the teachings of the present invention." *See, e.g.*, Exhibit H, 3:45-56; Exhibit I, 3:61-4:6 (Figs. 1-4). Further, each of the remaining figures show details from Figures 2 or 3 and are also "constructed according to the teachings of the present invention." Exhibit H, 3:57-44; Exhibit I, 4:8-23 (Figs. 5-8). And, unlike most other patents in which the claims are not limited to what is described as the invention, the patent lacks a clause suggesting the patent is not limited by its specific disclosure.

Each specification then turns to its "Description of Invention." All of the embodiments described are "of the invention[.]" *See, e.g.,* Exhibit H, 4:36; Exhibit I, 4:54. And, critically, each specification reiterates the result obtained because the invention removes air molecules:

> "[T]he stored products experience substantially less heat transfer as a result of both the *removal of air molecules*, by manipulation of the vacuum pump assembly designated 32, from the cooler assembly 14 and the cooler lid assembly 10, which *greatly reduces convection and conduction*."

Exhibit H, 5:14-19 (emphasis added), Exhibit I, 5:32-38.  Further, The '543 Patent specification

and its progeny each disparages prior art coolers which do not remove air from the storage area

under a subheading titled "Description of the Prior Art" in the "Background of the Invention."

Defendants here reproduce only two of the multiple examples from the "Description of the Prior

Art" but all of them involve removal of air/oxygen:

> "[T]he described air barrier [in U.S. Pat. No. 6,003,719] between the inner and
> outer shell is *far less efficient at reducing conductive and convective heat than
> removing air molecules all together.* In comparison, *by removing the air
> molecules* the proposed [present] invention creates a far superior container while
> simultaneously removing the decomposing effects of oxygen this (*sic.*) not only
> keeps products cold for longer periods of time, but it also maintains freshness."
> Exhibit G, 2:8–15; Exhibit H, 2:17-28 (emphasis added).

> "Since the food must be first put in to [sic] a container prior to being stored in the
> lunch box [of U.S. Pat. No. 6,510,946], it in no way prolongs freshness, since the
> vacuum space is separate from the food storage areas and thus *oxygen is still
> present where the food is actually stored*."  Exhibit G, 2:45–49; Exhibit H 2:39-62
> (emphasis added).

The one and only mechanism disclosed for "the invention" is the removal of air from the closed

space.

It is well established that expert testimony inconsistent with the specification is accorded

no weight.  *See, e.g, Vitronics Corp. v. Conceptronic, Inc.*. 90 F.3d 1576, 1584-85 (Fed. Cir.

1996) (citing *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed. Cir. 1995);

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 983 (Fed. Cir. 1995)) ("Thus, expert

testimony tending to show that those skilled in the art would, in certain circumstances,

understand "solder reflow temperature" to mean the solder liquidus temperature is entitled to no

weight in light of the clear contrary meaning shown in the specification."); P*hillips Petroleum

Co. v. Huntsman Polymers Corp.*, 157 F.3d 866, 870 (Fed. Cir. 1998) ("When the intrinsic

evidence unambiguously delineates the scope of the patent, resort to extrinsic evidence,

including expert testimony, is unnecessary." (citations omitted)).  There is no good-faith reason

for allowing Dr. Garris to discuss mechanisms that are inconsistent with the sole mechanism which is the invention, namely, removing air from the closed chamber.  *Id.*

## IV.    CONCLUSION

For the foregoing reasons, the Court should preclude H-E-B from offering or relying on expert testimony from Dr. Garris on claim construction.   A proposed order is attached.

Respectfully submitted,

PATTERSON + SHERIDAN, LLP

*/s/Jerry R. Selinger*
Jerry R. Selinger
Texas State Bar No. 18008250
1700 Pacific Avenue, Suite 2650
Dallas, Texas  75201
Telephone:  214-272-0957
Facsimile:  713-623-4846
jselinger@pattersonsheridan.com
ATTORNEYS FOR DEFENDANTS
HOME DEPOT U.S.A., INC., AND HOME DEPOT PRODUCT AUTHORITY, LLC

LAW OFFICES OF LARRY A. ROBERTS

/s/ Larry A. Roberts
Larry A. Roberts, Esq.
GA State Bar No. 608725
*Pro Hac Vice*
3114 Hudson Pond Ln.
Marietta, GA 30062
(678) 428-7670 | Telephone
(888) 376-4185 | Facsímile
lrobertsesq@gmail.com

 ATTORNEYS FOR DEFENDANTS WADLEY HOLDINGS, LLC, AND SOUTHERN SALES & MARKETING GROUP, INC.

## **CERTIFICATE OF CONFERENCE**

The undersigned certifies that Defendants have complied with the conference requirement of Local Rule CV-7i, as set forth in the body of this motion.

*/s/ Jerry R. Selinger*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on October 5, 2020, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document and referenced attachments through the Court's CM/ECF system.

*/s/ Jerry R. Selinger*