# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| H-E-B, LP, | § § § § | |
| Plaintiff, | | |
| v. | § § § § § § § § § § § § | Case No. 6:20-CV-00081-ADA |
| WADLEY HOLDINGS, LLC; SOUTHERN SALES & MARKETING GROUP, INC.; NINGBO KUER PLASTIC TECHNOLOGY CO., LTD.; NINGBO KUER KAYAK CO., LTD.; NINGBO KUER OUTDOOR PRODUCTS CO., LTD.; HOME DEPOT U.S.A., INC.; and HOME DEPOT PRODUCT AUTHORITY, LLC, | | JURY TRIAL DEMANDED |
| Defendants. | | |

**PLAINTIFF H-E-B, LP'S OPPOSITION TO DEFENDANTS' OPPOSED MOTION TO STRIKE AND RENEWED OPPOSED MOTION TO PRECLUDE TESTIMONY OF PLAINTIFF'S EXPERT, AND CROSS-MOTION TO STRIKE DEFENDANTS' EXPERT TESTIMONY**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1
II. BACKGROUND ............................................................................................................. 2
III. ARGUMENT .................................................................................................................. 4
    A. Expert Testimony Is Wholly Unnecessary to Construe the Terms at Issue. .......... 4
    B. H-E-B Has Satisfied *This* Court's Disclosure Requirements .............................. 5
    C. Defendants' Reliance on *Lodsys*—and EDTX Rules—Is Misplaced. ................... 7
    D. Defendants' Cannot Claim to Have Suffered Any Prejudice. ............................. 8
    E. In the Alternative, H-E-B Cross-Moves to Strike Defendants' Disclosure. ........10
IV. CONCLUSION ..............................................................................................................10

## TABLE OF AUTHORITIES

**Page**

**CASES**

*American Patents v. Coolpad Group, Ltd.*,
  No. 4:19-cv-877, 2020 WL 5534482 (E.D. Tex. Sept. 15, 2020) ................................... 3, 7, 8

*LBS Innovations, LLC v. Apple, Inc.*,
  2020 U.S. Dist. LEXIS 50353 (E.D. Tex. Mar. 24, 2020) ....................................................... 7

*Lodsys, LLC v. Brother Int'l*,
  No. 2:11-cv-90, 2013 WL 6442185 (E.D. Tex. Mar. 12, 2013) .......................................... 3, 7

*TQP Dev., LLC v. Wells Fargo & Co.*,
  No. 2:12-CV-61-JRG-RSP, 2013 U.S. Dist. LEXIS 169259 (E.D. Tex. Dec. 2,
  2013) ..................................................................................................................................... 7

**OTHER AUTHORITIES**

Local Rule 4-2 ................................................................................................................................ 7

Local Rule 4-3 ................................................................................................................................ 8

Local Rule 4-3(b) ....................................................................................................................... 7, 8

## I. INTRODUCTION

In a move that smacks of the strategic hyper-aggression Defendants have displayed to date, they are not only seeking to have an expert explain to the Court why everyday English words like "closed," "position," and "insulation" must be expressly construed to require "air removal," (Dkt. 56), not only asking that Plaintiff H-E-B be precluded from presenting contrary expert testimony, (Dkt. 55), but now, Defendants go so far as to file what amounts to an additional, unsanctioned *Markman* brief outside the Court's schedule and in excess of the Court's limits. (Dkt. 58.) Defendants' tactics are so aggressive, in fact, that they only make sense when one considers Defendants' comments to H-E-B: these motions are "pressure we [Defendants] want to apply to" H-E-B.

Once one understands that Defendants' motions are not motivated by merits, but rather as part of a "pressure" campaign seeking to force H-E-B to abandon its patent rights, the procedural maneuvering comes into sharper relief. First and foremost, the "rule" Defendants are attempting to apply here does not actually exist in this Judicial District. Instead, Defendants have resorted to importing rules from the Eastern District of Texas to try and manufacture a dispute. But H-E-B has fully complied with *this* Court's requirements.[1] Despite having to respond to

---

[1] Defendants' motion is premised on language in the Court's Scheduling Order. (Dkt. 41.) After that order issued, but before Defendants filed the instant motion, this Court substantially revised its Order Governing Procedures in several important ways. Specifically, the Court removed the language dictating that "parties shall…provide a summary of the witness's expected testimony" that is Defendants' entire basis for moving here. (*Compare* Dkt. 41, *with* Order Governing Proceedings – Patent Case, September 22, 2020 ("September 2020 OGP").) Moreover, the Court clarified that disclosures for rebuttal experts like Dr. Garris come after disclosures regarding opening experts like Defendants' Dr. Olafsen. (September 2020 OGP at 7–8.) Given that the new OGP was not installed for this case, H-E-B acknowledges it is not technically binding on these parties. However, because the Court's changes are aligned with H-E-B's positions below, the new OGP is highly instructive. Defendants never mention the new OGP, or make any attempt to distinguish its changes, (*see generally* Dkt. 58), but presumably Defendants knew of its existence since they filed both their original and renewed briefs after the OGP issued.

Defendants' claims of indefiniteness—an issue where Defendants bear the burden of proof—H-E-B nonetheless advanced its expert disclosures so Defendants would have them and be able to respond to them in *Markman* briefing. Defendants have now done so, demonstrating there is no prejudice here. For all these reasons, Defendants' "gotcha" motion should be denied.

Alternatively, H-E-B is equally content to have ***neither*** side present expert testimony on claim construction. Indeed, H-E-B would prefer it that way: expert testimony is wholly unnecessary to understand the everyday words and phrases at issue here. The only reason H-E-B has brought forth an expert at all is to rebut Defendants' expert. Thus, given that Defendants' disclosure is no better than the H-E-B disclosure about which Defendants complain, H-E-B hereby cross-moves to preclude Defendants' expert from testifying for the very same reasons.

## II.     BACKGROUND

Pursuant to the Court's Scheduling Orders (Dkt. 41, 48), the parties exchanged terms for construction on August 24. (Exs. 1, 2[2].) H-E-B only identified four means-plus-function terms, (Ex. 1 at 2–3), while Defendants flagged approximately 20 claim terms organized into 14 groups, (Ex. 2 at 2–5).

On September 4, the parties exchanged proposed constructions. (Exs. 3, 4.) Other than the means-plus-function terms, H-E-B proposed that the plain and ordinary meaning should be applied. (Ex. 3 at 2–8.) Defendants proposed constructions for each term, including identifying two terms as allegedly indefinite with an explanation consisting of two, short sentences. (Ex. 4 at 6-7 ("In the context of the claim limitation in which it appears, the term 'proximate' is indefinite," and "These terms are indefinite.").)

---

[2] Exhibits are attached to the Declaration of Joseph Reid filed herewith ("Reid Decl.").

On September 11, the parties exchanged extrinsic evidence. (Exs. 5, 6.) While Defendants characterize their disclosure as a "six-page summary" of their expert's opinions, a closer examination shows it contains far less substance than implied. Each term's discussion amounts to: (1) a paragraph restating Defendants' proposed construction, (2) a paragraph noting with boilerplate how Defendants' expert would testify regarding "the intrinsic record of the asserted patents, and applicable legal and scientific principles," together with a sentence or two of detail, and (3) a paragraph reserving rights "if circumstances dictate." (Ex. 6.)

Having no idea of Defendants' basis for claiming indefiniteness, H-E-B's September 11 disclosure reiterated its fundamental belief that "the meanings of the claim terms identified by the parties are clear from the intrinsic record, and as such extrinsic evidence is not needed." (Ex. 5 at 2.) Nevertheless, H-E-B identified extrinsic evidence it would use in rebuttal, including Dr. Garris, who would respond to Defendants' expert's positions. (Ex. 5 ("H-E-B anticipates that Dr. Garris's will rebut arguments and opinions raised by Defendants and/or Defendants' expert during these claim construction proceedings….based on the intrinsic evidence, extrinsic evidence, and/or his experience in the field.").)

On a September 16 meet-and-confer, Defendants objected to H-E-B's disclosure. (Reid Decl. at ¶ 8.) In subsequent correspondence, Defendants based their objection on the Eastern District's *Lodsys* opinion. (Ex. 7.) H-E-B countered that *American Patents* was more applicable authority. (Ex. 8.) Nonetheless, to obviate any remaining concerns and allow Defendants to address Dr. Garris's positions in the *Markman* briefing, H-E-B supplemented its disclosure on September 24. (Ex. 9 (H-E-B's Supplemental Extrinsic Disclosure).) Later that day, Defendants moved to preclude H-E-B from relying on Dr. Garris. (Dkt. No. 55.)

After the parties filed their respective opening *Markman* papers, (Dkt. Nos. 56, 57), including their respective experts' declarations, (Dkt. No. 56-4 (Garris); Dkt. No. 57-6 (Olafsen), Defendants requested another meet-and-confer. During this call, Defendants announced their intention to renew their motion and also to move to strike Dr. Garris's declaration, which counsel characterized as "pressure we [Home Depot] want to apply to" H-E-B.[3] (Reid Decl. at ¶¶ 12-18, Exs. 10, 11.) While H-E-B noted its willingness to eliminate the dispute by having both sides abandon their unnecessary experts, it indicated that if Defendants insisted on going forward, it would be forced to oppose and cross-move. (*Id.*) Defendants refiled on October 5. (Dkt. 58.)

## III.   ARGUMENT

### A.   Expert Testimony Is Wholly Unnecessary to Construe the Terms at Issue.

As H-E-B stressed in its *Markman* brief, the terms at issue in this case are easily understood. (*See generally* Dkt. No. 56.) Neither the Court nor any prospective juror will need help understanding words like "closed," "position," and "insulated." (*Id.*) The only reason this issue has arisen at all is Defendants' attempt to insert extraneous requirements into these everyday words of common parlance. (*Id.*)

But, irrespective of what a retained expert says, the word "closed" has absolutely nothing to do with "air removal." Neither does "insulation." All these constructions—and Defendants attempt to read "air removal" into four, separate sets of claim terms—are blatant attempts to narrow the patents-in-suit and create baseless noninfringement arguments. For the reasons H-E-B stated in its *Markman* brief (and will not duplicate here), Defendants' efforts flout the rules of claim construction and openly defy Federal Circuit precedent. (*Id.*) Defendants have

---

[3] In the very same correspondence, Defendants' counsel expressly accused H-E-B and its counsel of "spoliation of evidence" because a video referenced in the Complaint had recently been removed from the public-facing H-E-B website. (Exs. 10, 11.) When H-E-B's counsel took umbrage at this accusation, Defendants' counsel agreed to "dial back" its language. (*Id.*)

now gone even further, using their "motion to strike" as additional, unsolicited *Markman* briefing about these terms.[4] (Dkt. 58 at 6–8.) Similarly, Defendants' efforts to deprive H-E-B of a response to Defendants' retained expert should be seen for what it is: an attempt to obtain an unfair, procedural advantage in furtherance of its improper claim construction positions. An effort, in Defendants' own words, "to apply pressure to" H-E-B.

### B. H-E-B Has Satisfied *This* Court's Disclosure Requirements.

Contrary to Defendants' efforts to transpose this case to the Eastern District of Texas, the only rules and procedures that apply are those of this Judicial District. And H-E-B fully complied with both the letter and spirit of those requirements, through its original extrinsic evidence disclosure and the subsequent, expanded disclosure it made voluntarily to obviate Defendants' concerns.

When extrinsic evidence was exchanged on September 11, H-E-B provided the best summary it could, given the information available to it. H-E-B's position was (and still is) that none of the disputed terms required construction and no extrinsic evidence—including but not limited to expert testimony—was necessary. (Ex. 5 at 2.) While H-E-B reserved the right to have Dr. Garris rebut Defendants' arguments and opinions, H-E-B did not intend to rely on Dr. Garris for any opinions on the intrinsic evidence and it has acted consistently with that position through the opening *Markman* briefs. (*Compare, e.g.*, Ex. 6 at 2–3, *with* Ex. 9 at 6–10.) While Defendants had alleged two terms were indefinite, Defendants had not yet provided any basis for that allegation. Indeed, the entirety of Defendants' disclosure about those terms prior to September 11 was two, spare sentences: "In the context of the claim limitation in which it

---

[4] The motion to strike alleges one of Dr. Garris's opinions is inconsistent with the disclosure of the specification. But even if this were true—which it is not—Defendants cite no authority that an expert declaration should be stricken on that basis. Defendants' authorities merely refers to the *weight* given to an expert opinion vis-à-vis the intrinsic record.

appears, the term 'proximate' is indefinite;" and "These terms are indefinite." (Ex. 4 at 6–7.) Accordingly, in preparing to identify extrinsic evidence on September 11, H-E-B fully disclosed what it knew it would provide, *i.e.*, a rebuttal to whatever Defendants' expert said. This original disclosure satisfied the Court's "good faith" standard in the Amended Scheduling Order, but it also complies with the Court's new standard going forward, *i.e.*, that parties disclose "the scope of the topics for the witness's expected testimony." (September 2020 OGP at 7–8.)

Defendants' argument reduces to the idea that the Court's order required H-E-B to predict what Defendants' expert would say about indefiniteness, and thereby forecast how to rebut it, ahead of time with zero information. While H-E-B certainly understands and respects the Court's instruction that the parties should "summarize…potential expert testimony in a good faith, informative fashion," (Dkt. No. 48), H-E-B does not believe the Court expected that level of clairvoyance. Indeed, the fact that the Court has now removed the requirement Defendants are citing from its procedures going forward suggests that it was never intended to be the draconian standard that Defendants have portrayed in their papers.

Defendants' argument also rests on a faulty sense of sequencing. The burden of proof on invalidity still stands with Defendants, and as holder of a patent entitled to a presumption of validity, H-E-B is entitled to rebut whatever evidence Defendants bring forth. Accordingly, H-E-B believes the Court's insistence on "good faith" in the Amended Scheduling Order was designed to promote cooperation and an open dialogue between the parties, which is exactly what happened here. (Dkt. 48.) Once Defendants complained about H-E-B's disclosure, H-E-B supplemented to provide the Defendants with an increased level of detail. That more granular disclosure not only evidences H-E-B's good faith effort to comply with the scheduling order, it also exceeds the standard the Court has now imposed going forward, *i.e.*, that parties disclose

"the scope of the topics for the witness's expected testimony." (September 2020 OGP at 7–8.) And, this Court's new OGP acknowledges that rebuttal expert disclosures ought to occur after opening disclosures, further aligning with the way the disclosures in this case proceeded. (*Id.*)

For all these reasons, the Court can and should deny Defendants' motion on the merits.

### C. Defendants' Reliance on *Lodsys*—and EDTX Rules—Is Misplaced.

Defendants' effort to strike H-E-B's expert disclosure is built around the *Lodsys* case.[5] But that case represents a different court applying its own local rule that is not present here to facts distinguishable from those here. As such, *Lodsys* is simply not applicable.

Eastern District Patent Local Rule 4-3(b), which has ***not*** been adopted in this Judicial District, requires in relevant part that:

> (b) Each party shall…serve a disclosure of expert testimony consistent with Fed. R. Civ. P. 26(a)(2)(B(i)-(ii) or 26(a)(2)(C) for any expert on which it intends to rely to support its proposed claim construction or indefiniteness position or to oppose any other party's proposed claim construction or indefiniteness position.

Based on this requirement, the Eastern District has found that a single-sentence reservation of rights failed to satisfy 4-3(b), because it did not "clearly indicate… [the] inten[t] to rely on a sworn declaration; identify the declarant; and identify the precise disputed claim terms which will be addressed thereby."[6] *Lodsys, LLC v. Brother Int'l*, No. 2:11-cv-90, 2013 WL 6442185, *2 (E.D. Tex. Mar. 12, 2013).

---

[5] Defendants also cite *TQP Dev., LLC v. Wells Fargo & Co.*, No. 2:12-CV-61-JRG-RSP, 2013 U.S. Dist. LEXIS 169259 (E.D. Tex. Dec. 2, 2013), and *LBS Innovations, LLC v. Apple, Inc.*, 2020 U.S. Dist. LEXIS 50353 (E.D. Tex. Mar. 24, 2020). But these are also cases interpreting and applying the requirements of the Eastern District's rules, not this Court's.

[6] If this Court were to apply the Eastern District rules to H-E-B, the more relevant precedent to follow would be *American Patents v. Coolpad Group, Ltd.*, No. 4:19-cv-877, 2020 WL 5534482 (E.D. Tex. Sept. 15, 2020). There, as here, the court was evaluating the sufficiency of expert disclosures related to indefiniteness. Although plaintiff did not even identify the identity its expert witness contrary to Rule 4-2, the Eastern District found no fault because the shortcomings were "directly attributable to Defendants' own perfunctory disclosures," *i.e.*, doing nothing more

But Rule 4-3 is not analogous to this Court's extrinsic evidence exchange, as Rule 4-3 requires the production of a full report or declaration. If anything, Rule 4-3 more closely matches the Amended Scheduling Order's November 6 deadline requiring the parties to submit a Joint Claim Construction Statement. (*Compare* Dkt. 48 at 3, *with* E.D. Tex. Patent LR 4-3(b).)

Again, H-E-B does not believe this Court intended its scheduling order to force patentees to articulate a complete defense to indefiniteness before ever seeing the defendant's basis. That would represent a remarkable switch in the relative burdens of proof and the respective timing of disclosures. Instead, H-E-B believes the Court intended the extrinsic evidence deadline to require a good faith disclosure based on the patentee's knowledge at the time. Here, where H-E-B knew absolutely nothing about Defendants' position, putting them on notice that H-E-B intended to use Dr. Garris in rebuttal was a reasonable, good faith disclosure. And, as discussed above, that is exactly what H-E-B provided.

### D.  Defendants' Cannot Claim to Have Suffered Any Prejudice.

Defendants devote a grand total of seven lines in their nine-page brief to the purported prejudice they have suffered from H-E-B's allegedly insufficient expert disclosure. (Dkt. 58 at 5-6.) Those claims are not only narrow, they cannot withstand even the slightest scrutiny.

Defendants first contend they were forced to choose which terms to present for construction without H-E-B's expert disclosure. (Dkt. 58 at 5.) But that wholly ignores both the remainder of the Court's claim construction schedule. By September 11, when the parties exchanged extrinsic evidence, the parties had already exchanged their lists of claim terms (on

---

than providing a list of allegedly indefinite claim terms. *Id.* at *2. Here, too, all H-E-B had received from Defendants going into the September 11 exchange was a list of allegedly indefinite terms. Given that H-E-B's identification of Dr. Garris and its explanation of his rebuttal role exceeded the *American Patents* disclosure, this Court applying the Eastern District rules should find that disclosure sufficient to proceed without penalty.

August 21) and proposed constructions (on September 4). Accordingly, Defendants had *already* made all the strategic decisions they claim were inhibited by H-E-B's September 11 paper. And, perhaps even more importantly, this argument also ignores H-E-B's consistent claims that no expert testimony was required for any of these terms. It is difficult to understand how H-E-B's rebuttal testimony would have influenced Defendants' opening positions, unless those positions were otherwise inadequate.

Defendants' other alleged "prejudice" is that H-E-B "had an advanced look" at Defendants' positions. (Dkt. 58 at 6.) But, as discussed above, the positions Defendants are referencing are Defendants' allegations of indefiniteness, an issue on which Defendants bear the burden of proof. Defendants cite absolutely no authority suggesting that H-E-B is required to respond blindly on that issue, yet that is their implication. According to them, merely by saying the word "indefiniteness," Defendants obligated H-E-B to obtain and prepare a thorough and complete set of expert opinions and provide those before ever seeing Defendants' allegations. That simply *cannot* be the case.

Here, when the Court reviews the disclosures H-E-B actually made, it can see both that H-E-B provided good faith disclosures and that those disclosures allowed Defendants the opportunity to respond fully and effectively. H-E-B's supplemental disclosure was made on September 24, the day before *Markman* briefs were due. (Ex. 9.) That disclosure, which incorporates the same level of detail as Defendants' "summary," tracks Dr. Garris's declaration, meaning Defendants had ample notice of Dr. Garris's opinions. (*Compare* Ex. 9, *with* Ex. 6.) Defendants have not only addressed the substance of his opinions here—implicitly demonstrating the fallacy of their own argument—they will also have the opportunity to address them again in Defendants' responsive *Markman* brief, which is due October 16.

Given that Defendants have not been prevented from addressing Dr. Garris's opinions—and have even expressly admitted that this entire set of briefing is merely a "pressure" campaign against H-E-B, rather than a motion on the merits—the Court need not worry that Defendants have been prejudiced. The Court should allow both sides to present their expert testimony so that a fair, full record is developed at the *Markman* hearing.

### E. In the Alternative, H-E-B Cross-Moves to Strike Defendants' Disclosure.

Instead of allowing H-E-B to present Dr. Garris's testimony, the Court could alternatively preclude ***both sides*** from presenting expert testimony. After all, the claim terms at issue are everyday words, expert testimony is not necessary to understand them, and Defendants' own disclosure fails to meet the standard that Defendants have attempted to apply to H-E-B.

H-E-B will not belabor the points from its *Markman* brief. What it will say is that, if Defendants' disclosure of Dr. Olafsen is held to the standard that Defendants suggest—essentially requiring the disclosure to contain all the detail of the report or declaration in question—then Defendants' own declaration must also be struck. Under each claim term, the Defendants provided a brief summary of Dr. Olafsen's opinions, but much of that summary was boilerplate, leaving only a sentence or two of substance. That is no different that the level of detail H-E-B provided on September 24. (*Compare* Ex. 6, *with* Ex. 9.) Thus, if H-E-B's disclosures are fatally flawed, Defendants' disclosures are as well. Accordingly, H-E-B asks that if the Court is considering striking Dr. Garris, it also strike Dr. Olafsen.

## IV. CONCLUSION

For the foregoing reasons, H-E-B asks the Court to deny Defendants' Motion and allow both sides' experts to be heard on claim construction. Alternatively, H-E-B requests that the Court grant H-E-B's cross-motion precluding either side from presenting expert testimony.

| | |
|---|---|
| Dated: October 13, 2020 | Respectfully submitted,<br><br>*/s/ Joseph P. Reid*<br>Thomas N. Millikan, Texas Bar No. 24105276<br>TMillikan@perkinscoie.com<br>Joseph P. Reid (*Pro Hac Vice*)<br>JReid@perkinscoie.com<br>Kyle R. Canavera (*Pro Hac Vice*)<br>KCanavera@perkinscoie.com<br>PERKINS COIE LLP<br>11452 El Camino Real, Suite 300<br>San Diego, California 92130<br>Telephone: 858.720.5700<br>Facsimile: 858.720.5799<br><br>*Attorneys for Plaintiff H-E-B, LP* |

-12-

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on October 13, 2020, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(b).

*/s/ Joseph P. Reid*
Joseph P. Reid