IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| H-E-B, LP,<br><br>    Plaintiff,<br><br>v.<br><br>WADLEY HOLDINGS, LLC; SOUTHERN SALES & MARKETING GROUP, INC.; NINGBO KUER PLASTIC TECHNOLOGY CO., LTD.; NINGBO KUER KAYAK CO., LTD.; NINGBO KUER OUTDOOR COOLERS CO., LTD.; HOME DEPOT U.S.A., INC.; and HOME DEPOT PRODUCT AUTHORITY, LLC,<br><br>    Defendants. | § § § § § § § § § § § § § § § § § § § Case No. 6:20-CV-00081-ADA<br><br>PUBLIC VERSION |

**HOME DEPOT U.S.A., INC. AND HOME DEPOT PRODUCT AUTHORITY'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT THAT H-E-B'S ASSERTED TRADE DRESS IS NOT INHERENTLY DISTINCTIVE**

**AND**

**ON PLAINTIFF'S FEDERAL AND STATE TRADE DRESS INFRINGEMENT AND UNFAIR COMPETITION CLAIMS, FEDERAL AND STATE TRADEMARK DILUTION CLAIMS, AND RELATED COMMON LAW CLAIMS BECAUSE H-E-B'S ALLEGED TRADE DRESS LACKS SECONDARY MEANING**

PATTERSON + SHERIDAN, LLP

John A. Yates
Texas State Bar No. 24056569
Aaron D. Perkins
Texas State Bar No. 24048967
Edgar N. Gonzalez
Texas State Bar No. 24092431
Patterson + Sheridan, LLP
24 Greenway Plaza, Suite 1600
Houston, Texas 77046
Telephone: 713-623-4844
Facsimile: 713-623-4846
jyates@pattersonsheridan.com
aperkins@pattersonsheridan.com
egonzalez@pattersonseridan.com

Jerry R. Selinger
Texas State Bar No. 18008250
1700 Pacific Avenue, Suite 2650
Dallas, TX 75201
Telephone: 214-272-0957
Facsimile: 713-623-4846
jselinger@pattersonsheridan.com

Abelino Reyna
Texas State Bar No. 24000087
900 Washington Ave., Suite 503
Waco, TX 76701
Telephone: 254-777-5248
Facsimile: 877-777-8071
areyna@pattersonsheridan.com

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II. THE KODI COOLER "TRADE DRESS" IS NOT PRODUCT PACKAGING AND CANNOT BE INHERENTLY DISTINCTIVE .................................................................. 1

    A. The Undisputed Facts and Controlling Law Establish that H-E-B's "Trade Dress" is Product Design, not Product Packaging .............................................................. 1

    B. H-E-B Fails to Offer Relevant, Competent Evidence to Create a Fact Issue .......... 3

        1. The 2015 and 2017 Emails are With Interested Parties and Show the Alleged Trade Dress is Not a Signifier of Source ....................................... 3

        2. The "Report of H-E-B Consumer Survey Results" is Incompetent, Inadmissible, and Supports Home Depot When Honestly Explained ........ 4

        3. The Alleged Copying is not Relevant, nor is H-E-B's Evidence Competent ................................................................................... 8

III. HOME DEPOT IS ENTITLED TO PARTIAL SUMMARY JUDGMENT OF NO SECONDARY MEANING ................................................................................................ 9

    A. H-E-B Has No Evidence of Secondary Meaning Before the Relevant Date .......... 9

    B. Home Depot's Rule 56(c)(2) Objections to H-E-B "Evidence" ........................... 10

IV. CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Bose Corp. v. Linear Design Labs, Inc.*,
    467 F.2d 304 (2d Cir. 1972)..................................................................................................5

*Eppendorf-Netheler-HINZ GmbH v. Ritter GmbH*,
    289 F.3d 351 (2002)..............................................................................................................3

*Litton Sys., Inc., v. Whirlpool Corp.*,
    728 F.2d 1423 (Fed. Cir. 1984)............................................................................................5

*Sno-Wizard Mfg., Inc. v. Eisemann Prods. Co.*,
    791 F.2d. 423 (5th Cir. 1986) ............................................................................................4, 5

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*,
    532 U.S. 23 (2001)............................................................................................................3, 8

*Wal-Mart Stores, Inc. v Samara Bros.*,
    529 U.S. 205 (2000).....................................................................................................1, 2, 6

**Statutes and Rules**

35 U.S.C. § 287................................................................................................................................10

Fed. R. Civ. P. 26..............................................................................................................................6

Fed. R. Civ. P. 56................................................................................................................... *passim*

**Other**

*McCarthy on Trademarks and Unfair Competition* (5th ed.)
    § 7.74................................................................................................................................3, 8
    § 15.1...................................................................................................................................9

Research Manual on Scientific Evidence 3d (2011).................................................................6, 7, 8

I.      **INTRODUCTION AND SUMMARY OF ARGUMENT**

H-E-B's Opposition Brief is notable for its avoidance of material, undisputed facts on which Home Depot bases this motion for partial summary judgment. Fed. R. Civ. P. 56 (e)(2). It also is notable for indiscriminately dumping materials that are not relevant and cannot be presented in a form that would make them admissible. Fed. R. Civ. P. 56 (c)(2), (e)(2).

Realizing that *Wal-Mart Stores, Inc. v. Samara Bros*., 529 U.S. 205, 212 (2000), which H-E-B fails to even cite, instructs that product design is never inherently distinctive, H-E-B seeks to transform "product design," into "product packaging." The undisputed material evidence shows that H-E-B designed a cooler that included a pressure release button to serve a functional purpose. Undisputed Fact 3 ("UF"); *accord* HEB Ex. 8, Le Tr. 64:17-65:6. While H-E-B may have tweaked the product design, it did not magically become product packaging. This means H-E-B has to prove its alleged trade dress acquired secondary meaning by January 25, 2016, when it sent a cease and desist letter to Kuer. UF 4. This it cannot do. The controlling law and undisputed material facts warrant partial summary judgment of no inherent distinctiveness and no secondary meaning.

II.     **THE KODI COOLER "TRADE DRESS" IS NOT PRODUCT PACKAGING AND CANNOT BE INHERENTLY DISTINCTIVE**

   A.   **The Undisputed Facts and Controlling Law Establish that H-E-B's "Trade Dress" is Product Design, not Product Packaging**

Product packaging, but not product design, can be inherently distinctive. *See* Opening Br. at 5, citing *Wal-Mart Stores,* 529 U.S. at 212. Notably, H-E-B ignores Home Depot's Undisputed Facts 1-4. *See* Opening Brief, 2-3. Consequently, the Court can and should "consider these facts undisputed for purposes of" this motion, Fed. R. Civ. P. 56(e)(2). Thus, H-E-B concedes it affixed removable stickers with the KODI brand and removable hang tags **on its** patented KODI coolers. UF 1-2. Those stickers and hang tags are the packaging on the product. H-E-B's assertion that

1

"the products contain[] the Trade Dress," Opposition Br., at 7, is further evidence that what is at issue here is product design, not product packaging.

Undisputed Fact 3 quotes from verified H-E-B interrogatory responses, which confirm that functionality was a key aspect of the structure of the button assembly: "H-E-B selected the color red … to stand out on the cooler … selected the black rosette button … to be easily replaceable. The pressure release button is set in depression to increase functionality. It is close to the top so the user does not have to reach for it …." *Id.*, Opening Br. at 2-3. In its Opposition, H-E-B offers only a conclusory, unsupported, and inaccurate assertion that it has "packaged the pressure release valve by selecting certain elements that are only for appearance and décor, namely the color red, shape of the 'rosette' and the location of the pressure release valve on the KODI cooler," H-E-B Opp. at 5. That unsupported lawyer argument is entitled to no weight, even if it did not directly contradict of H-E-B's verified response. H-E-B's effort to recast product design into product packaging also is inconsistent with the undisputed fact that H-E-B obtained a word mark registration for "Liftease" identifying the associated goods as a "Vacuum release valve as an integrated component of portable hardside coolers." UF 2 & Ex F at HD000336. H-E-B's specimen of use trumpets its "LiftEase vacuum release valve," *Id.* at HD000287-88.

A mark is inherently distinctive only when the mark "almost automatically tells a customer that it refers to a brand and … immediately signal[s] a brand or product source." *Wal-Mart Stores,* 529 U.S. at 212. Its intrinsic nature must "serve to identify a particular source." *Id.* at 210. The functional role of the structure, the removable labels with the KODI and H-E-B brands attached to the cooler product, the existence of the LiftEase registration with its description of the associated goods, and the absence of evidence promoting the trade dress, commonly "look for"

2

advertisements, show that the alleged trade dress alone did not "almost automatically" tell a customer that it refers to a brand and immediately signals a brand or product source.

Calling something packaging does not make it so. H-E-B's 2014 KODI cooler webpage advertised the utilitarian advantage of the button: "eliminate the struggle to open your cooler. Simply use the pushbutton to release the air vacuum and lift the lid." UF 16 & Ex. K at HD007630. H-E-B responds by denying, without explanation or citing to any evidence, that these words advertised a utilitarian advantage. Opposition Br. at 3. In addition, H-E-B argues functionality is not relevant, *citing McCarthy on Trademarks and Unfair Competition* § 7.74 (5th ed.), Opposition Br. at 3. On the contrary, *McCarthy* instructs that advertising touting a product feature for its desirable utilitarian qualities "supports instead the inference that consumers consider the claimed trade dress a desirable feature of the product and **not** primarily a signifier of source." *Id*. (last sentence) (citations omitted; emphasis added).[1] The Court should grant summary judgment as a matter of law that H-E-B's alleged trade dress is not inherently distinctive.

### B. H-E-B Fails to Offer Relevant, Competent Evidence to Create a Fact Issue

H-E-B's incorrect and misleading efforts to create a fact issue on inherent distinctiveness are easily revealed. In particular, H-E-B relies on two irrelevant emails, and an incompetent, irrelevant "Report" of an alleged consumer survey. H-E-B Opp., at 5.

### 1. The 2015 and 2017 Emails are With Interested Parties and Show the Alleged Trade Dress is Not a Signifier of Source

For proper context, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ HEB Ex. 18, Ramsey Tr. 35:19-20. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

---

[1] Indeed, "[i]f a product feature is functional it cannot be protected trade dress." *Eppendorf-Netheler-HINZ GmbH v. Ritter GmbH*, 289 F.3d 351, 355 (2002)(citing *TrafFix Devices Inc. v. Mktg. Displays Inc*, 532 U.S. 23, 29 (2001)).

3

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████ (first page). Neither email string mentions any of the details that H-E-B claims as its trade dress. Both emails focus on the utilitarian feature of the pressure relief valve, showing these insiders considered that to be a desirable feature of the product and not primarily a signifier of source.

These emails are not relevant because neither are from a member of the consuming public, and both involve interested parties, which may explain why H-E-B withheld that information from Professor Nichols. Ex. E, Nichols Tr. 149:17-150:22. *Sno-Wizard Mfg., Inc. v. Eisemann Prods. Co.*, 791 F.2d. 423, 429 (5th Cir. 1986) (affirming district court rejection of testimony from a witness of actual confusion because the witness was an interested party.). But, to the extent the Court considers them, HEB Exs. 17 and 9 support Home Depot and negate the existence of any genuine fact issue.

        2.    <u>The "Report of H-E-B Consumer Survey Results" is Incompetent, Inadmissible, and Supports Home Depot When Honestly Explained</u>

H-E-B's reliance on "Report of H-E-B Consumer Survey Results" (Nichols Report, Appendix C) has even less merit than the two email strings. With good reason, Home Depot has moved to exclude Appendix C and to preclude Ms. Nichols from testifying, *inter alia*, about the unreliable results selectively summarized in that report. Dkt. 128, at 15-20 (§ IV.C). Home Depot objects because the survey "Report," and its results, cannot be presented in a form that would be

4

admissible into evidence. Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 702. H-E-B's description of the "Report's" alleged relevance suppresses two critical facts that eviscerate any evidentiary value.

For context, the "Report" identifies Karen Lisko, Ph.D. as the author. Home Depot learned Dr. Lisko is an employee of H-E-B's law firm, Perkins Coie, although neither Professor Nichols nor Perkins Coie volunteered that information. Without waiving its objection, Home Depot first addresses the critical facts H-E-B here omits because, when correctly understood, the "Report," – even if considered – does not create a genuine issue of material fact.

One critical fact is that Perkins Coie excised the brand names from the coolers used in the on-line survey, making the survey results misleading (even had they been fully and completely included in the selectively summarized "Report") and not competent summary judgment evidence. Professor Nichols supplied three images to Dr. Lisko: (1) an accused Everbilt cooler; (2) an accused nICE cooler, and (3) a KODI cooler – all with the permanently affixed brand names, either molded into the coolers or on a nameplate. The "Report" shows five coolers were used: the three provided by Professor Nichols, a YETI Roadie cooler, and an Igloo cooler (included as supposed "controls"). Following Professor Nichols' instructions, Perkins Coie deleted these prominent and permanent brand-identifiers for its survey. Conducting the survey with these doctored photographs flies in the face of circuit court trade dress case law regarding likelihood of confusion surveys that caused unreliable results. *See, e.g. Litton Sys., Inc., v. Whirlpool Corp.*, 728 F.2d 1423, 1446 (Fed. Cir. 1984) (reversing trial court decision because "it assigns no weight to the practice of the trade, shown by the exhibits, of placing the maker's or brand name conspicuously of the front of the microwave oven ….")(applying 8th Circuit law); *Sno-Wizard,* 791 F.2d. at 427-28 (name on machine); *Bose Corp. v. Linear Design Labs, Inc.*, 467 F.2d 304, 309-10 (2d Cir. 1972)(the name

on the loudspeakers "goes far to eliminate confusion of origin," and "there is hardly likelihood of confusion or palming off when the name of the manufacturer is clearly displayed").

The second critical fact is that the five doctored photographs used in the survey included two coolers (YETI and Igloo) that had no pressure relief button at all. Within the universe of 132 respondents (a subset of the 200 originally qualified respondents, winnowed down by Lisko) used in the summary survey report, 56 respondents (42.4%) reported they thought all five coolers were sourced from the same company. If anything, this says that, to respondents, the coolers all looked like the first-in-time, button-less YETI cooler. The survey, even as reported by Dr. Lisko, shows the alleged trade dress does not serve to "almost automatically tell[s] a customer that it refers to a brand and … immediately signal[s] a brand or product source." *Wal-Mart*, 529 U.S. at 212.

Home Depot objects because the "Report," and its results, cannot be presented in a form that would be admissible in evidence, and thus are not competent summary judgment evidence. Fed. R. Civ. P. 56(c)(2). Dr. Lisko was not designated as a testifying expert and did not prepare a report under Fed. R. Civ. P. 26(a)(2)(B). There was no disclosure of Dr. Lisko's still unknown credentials as a trademark survey expert. *See* Research Manual on Scientific Evidence 3d (2011)[2] (the "Manual") at 375 ("In all cases, the [survey] expert must demonstrate an understanding of foundational, current, and best practices in survey methodology, including sampling, instrument design (questionnaire and interview construction), and statistical analysis."). The "Report" also lacks elements sufficient to make it a reliable survey report. *See id.* at 415-417. It fails to include

---

[2] The Manual is a collection of the Federal Judicial Center's guidelines "formulated to provide the tools for judges to manage cases involving complex scientific and technical evidence." Manual, Preface, p. xv. The Manual includes detailed guidelines on the proper conduct and reporting of reliable consumer surveys, as well as what is required to support the use of survey results in evidence. *See generally* Manual at 359-418. Available for download from the Federal Judicial Center website at: https://www.fjc.gov/sites/default/files/2015/SciMan3D01.pdf .

a copy of the survey questionnaire; a description of scoring methods, weighting and estimation procedures used; sampling error estimates; statistical tables with all survey data; validation methodology or results, or code books.  It is not, and cannot be, authenticated by Professor Nichols.

Professor Nichols also is not qualified to testify about the "Report" or its contents as a secondary expert because she lacks the minimum factual knowledge or survey expertise.  She is not an expert in marketing, in consumer behavior, in marketing research, or in consumer surveys. Ex. E, Nichols Tr. 12:18-13:5. She also lacks sufficient familiarity with the actual survey underlying the "Report."  To be admissible through a secondary expert, the secondary expert must in addition to the other necessary qualifications, "demonstrate familiarity with" certain properties of the survey being discussed, including the survey purpose and methodology (*e.g.* target population, sampling design, the actual survey instrument), the ***complete*** survey results and the statistical analyses used in interpreting them. *See* Manual at 375-76.

Professor Nichols did not conduct the survey and had no information about who conducted the survey or how the survey was conducted. Ex. E, Nichols Tr. 123:8-124:6. She had no knowledge of whether, or how, any data collected during the survey was validated. *Id*., 124:11-13, 124:15-19. She only had access to Appendix C (the "Report"), and not the survey itself or information relating to it. *Id*., 112:11-113:21.  And, when confirming that she had not even received (let alone reviewed) the actual survey data, she testified: "Yeah, I would not have been able to do anything about those. Those aren't my -- that's not my area of expertise." *Id*., 113:17-21.[3]  If any doubt remained, the Nichols Report also contains a critical error that confirms her lack

---

[3] Professor Nichols had minimal input on the survey design. She did not decide which of two survey types. Ex. E, 114:10-115:5, 115:25-116:9. She suggested excluding anyone from Dallas. *Id.*, 125:24-126:10, 126:17-19, 126:22-127:1. Other than voluntarily sending some articles (not identified in her report) to Dr. Lisko, Professor Nichols had no other input in designing or conducting the survey or reviewing or analyzing survey data. *Id.*, 120:25-121:20.

7

of qualifications to offer opinions on the survey. Ex. N, ¶¶ 43, 82.  The Nichols Report opines that the Lisko Report "indicates that at least **67% of the qualified respondents** identified [H-E-B's alleged trade dress] particularly noting the 'red button' as a distinctive source identifier." *Id*. (emphasis added).  A brief review of the "Report" reveals the actual results were that of the 200 originally qualified respondents only **18 (*i.e.*, 9%)** thought just the KODI, nICE, and Everbilt coolers — stripped of their permanent and prominent brand identification—were "made by, sponsored by, or affiliated with the same company."  Even were the "Report" a competent survey report, which it is not, Professor Nichols is not a competent, qualified secondary survey expert and should not be allowed to offer opinions based on the "Report" or rely on its results. *See* Manual at 375-76.  Home Depot's objections to the "Report" are well-founded and should be sustained.

        3.      <u>The Alleged Copying is not Relevant, nor is H-E-B's Evidence Competent</u>

H-E-B incorrectly argues in conclusory fashion that the intentional copying it alleges creates a fact issue as to inherent distinctiveness. Opposition Br. at 5-6.  On the contrary, copying an unpatented feature, shows, if anything, that "consumers consider the claimed trade dress a desirable feature of the product and not primarily a signifier of source." *McCarthy, supra*, §7.74; *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001).

Further, Home Depot objects that the materials on which H-E-B relies for copying cannot be presented in a form that would be admissible in evidence.  Fed. R. Civ. P. 56(c)(2).  This includes the Nichols Report and its opinions, which are the subject of a pending *Daubert* motion.  The materials cited in the Nichols Report are fatally infected with multi-level hearsay, as well as being dumped without any focused explanation.  Moreover, Professor Nichols does not opine that copying is evidence of ***inherent*** distinctiveness. The Court should grant partial summary judgment of no inherent distinctiveness because the motion and supporting materials, including the undisputed facts, show Home Depot is entitled to it.  Fed. R. Civ. P. 56(e)(3).

### III. HOME DEPOT IS ENTITLED TO PARTIAL SUMMARY JUDGMENT OF NO SECONDARY MEANING

#### A. H-E-B Has No Evidence of Secondary Meaning Before the Relevant Date

Secondary meaning is the association by consumers of a mark to a commercial source. *McCarthy*, *supra*, at § 15.1. H-E-B concedes, but then ignores, that the relevant date for determining the existence of secondary meaning was January 25, 2016. UF 4. H-E-B also ignores that its process of acquiring of secondary meaning could not even begin until KODI coolers with the alleged trade dress were offered for sale to ***customers***. The earliest date in evidence is June 13, 2014. HEB Ex. 14, LiftEase application, at HD000285. *See also* HEB Ex. 21 (showing sales).

Based on the foregoing, the first factor, length of use, is June 13, 2014 to January 25, 2016. H-E-B's evidence of the second factor, volume of sales, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ H-E-B offers no competent evidence of the amount actually spent on, or the types and frequency of, any alleged advertising of the KODI coolers between June 13, 2014 and January 25, 2016. Only one H-E-B exhibit, HEB Ex. 2, falls within the relevant time frame, and it is about a secret memo posted internally at H-E-B. H-E-B's Superbowl commercial was in 2019. Its list of videos and assertions of advertising on social media platforms is bereft of evidence of actual advertising of the KODI coolers during the relevant time period. None of them used the "look for" tag indicating trade dress. Home Depot already addressed H-E-B's bogus "survey" and the two emails allegedly constituting direct consumer testimony. Finally, Professor Nichols' discussion of alleged copying by any of the defendants does not even start until the day ***after*** the end of the critical window for proof of secondary meaning. Ex. N, ¶¶ 45-60. Since there is no evidence of copying by any of

the defendants (let alone Home Depot) before the critical time window closed, there is no relevant evidence of intent, let alone relevant intentional copying of H-E-B's alleged trade dress.

H-E-B's final theme is that Home Depot has withheld evidence relevant to secondary meaning. Nonsense. H-E-B is well aware that Home Depot did not even begin selling any accused product until late 2018 – almost three years after the critical time window closed. H-E-B also knows Home Depot did not begin considering a cooler of the type at issue here until mid-2018. H-E-B also ignores that the Court expressly exempted Home Depot from seeking from third-party Olympia Tools documents "created internally at [Olympia] that had – that Mr. Selinger could say in good faith had nothing to do – communications or requests made by Home Depot, I will allow you to get, if you are able to, from a judge in California when you're directly subpoenaing that third party." June 2, 2021 Hearing Tr. at 18. H-E-B refuses to admit it failed to send Home Depot notice of infringement, or mark its products, under 35 U.S.C. § 287. Home Depot absolutely denies it violated the Court's Orders. H-E-B's attempts to hide behind Rule 56(d) are meritless.

### B. Home Depot's Rule 56(c)(2) Objections to H-E-B "Evidence"

Finally, Home Depot objects that the materials on which H-E-B actually relies as evidence of copying. H-E-B has neither properly authenticated them nor demonstrated that they fall within an exception to the hearsay rule. H-E-B has neither presented its evidence in admissible form, nor met its burden to explain how it could do so. Fed. R. Civ. P. 56(c)(2). Home Depot objects for the same reason to H-E-B footnotes purporting to generally incorporate hundreds of other unauthenticated documents containing multiple levels of hearsay. They should be excluded.

## IV. CONCLUSION

In view of the opening brief and the foregoing, the Home Depot Defendants are entitled to summary judgment on Counts 5-12, all of which require that H-E-B demonstrate either inherent distinctiveness (which it cannot) or secondary meaning (which it has not).

Respectfully submitted,

**PATTERSON + SHERIDAN, LLP**

/s/ *Jerry R. Selinger*
Jerry R. Selinger
Texas State Bar No. 18008250
1700 Pacific Avenue, Suite 2650
Dallas, TX 75201
Telephone: 214-272-0957
Facsimile: 713-623-4846
jselinger@pattersonsheridan.com

Abelino Reyna
Texas State Bar No. 24000087
900 Washington Ave., Suite 503
Waco, TX 76701
Telephone: 254-777-5248
Facsimile: 877-777-8071
areyna@pattersonsheridan.com

John A. Yates
Texas State Bar No. 24056569
Aaron D. Perkins
Texas State Bar No. 24048967
Edgar N. Gonzalez
Texas State Bar No. 24092431
24 Greenway Plaza, Suite 1600
Houston, Texas 77046
Telephone: 713-623-4844
Facsimile: 713-623-4846
jyates@pattersonsheridan.com
aperkins@pattersonsheridan.com
egonzalez@pattersonsheridan.com


ATTORNEYS FOR DEFENDANTS
HOME DEPOT U.S.A., INC. AND HOME
DEPOT PRODUCT AUTHORITY, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on all counsel of record on September 17, 2021.

/s/*Jerry R. Selinger*
Jerry R. Selinger

## FILED UNDER SEAL

I hereby certify that on September 17, 2021, I electronically filed the foregoing document under seal with the Clerk of the Court using the CM/ECF system pursuant to the Court's Standing Order regarding Filing Documents under Seal in Patent Cases and Redacted Pleadings (Dkt. 81).

/s/*Jerry R. Selinger*
Jerry R. Selinger